[No. 15329. Department One. October 15, 1919.]

LOUISA E. GARRING, *Appellant,* v. J. A. STEPHENS *et al.,*
*Respondents.*[1]

EVIDENCE (100)—DECLARATIONS—SELF-SERVING — ADMISSIBILITY OF
EVIDENCE OF NONDELIVERY OF DEED. Where a deed was made to a
minor and delivered to the grantor's attorney and came into the
possession of the grantor's administrator, it is admissible to show
the statements of the grantor, after she had conveyed the land to
another, that the deed was made at the suggestion of her attorney
in anticipation of suits, and was to be returned to her when called
for, and that she had requested its return; since she then had no
self interest to subserve.

SAME (42)—COMPETENCY—MOTIVE OR INTENT. If the intention of
the grantor in delivering a deed is doubtful, evidence of subsequent
acts of the grantor is competent as to the intention at the time of
delivering it to a third person.

Appeal from a judgment of the superior court for
Lewis county, Back, J., entered December 2, 1918, in
favor of the defendants, in an action of ejectment and
to quiet title, tried to the court. Affirmed.

*A. E. Rice* and *L. J. Birdseye,* for appellant.

*W. H. Cameron* and *C. D. Cunningham,* for respond-
ents.

MITCHELL, J.—This action was commenced in July,
1917. It is the statutory action of ejectment and to
quiet title. It was tried without a jury, and resulted
in a judgment for defendants, from which judgment
plaintiff has appealed.

Stephens and wife, as such, and the Eastern Rail-
way & Lumber Company, a corporation, appeared
separately, and in addition to general denials, each
interposed several affirmative defenses, concerning all
of which evidence was introduced. There is involved

[1] Reported in 184 Pac. 314.

the validity of an instrument purporting to be a deed, and upon the threshold of the inquiry, appellant admits she is not entitled to prevail if it shall be determined that deed was invalid. Having reached the conclusion the instrument did not operate as a conveyance of title, it will, therefore, be useless to consider any other feature of the controversy.

The instrument just referred to was made by Jane E. Bryan on October 19, 1905, and purported to convey to William W. Miller a tract of land which included the lesser tracts involved in this action. At that time, and for many years prior thereto, she owned and lived on the land described in the deed, and continued to reside thereon until her death, April 27, 1907. During those years there lived with her in the same home her nephew, Allen Miller, and his wife and their son, William W. Miller, the latter being the grantee named in the deed referred to. Allen Miller and wife and their son continued to live on the place a number of years after the death of Jane E. Bryan. Jane E. Bryan and Allen Miller were considerably in debt on October 19, 1905. Her deed to William W. Miller, who at that time was twelve years of age, was prepared by her lawyer (J. B. Landrum) and acknowledged before him as a justice of the peace. Only one person who was present at the execution of the deed, Mrs. Maloney, testified in the trial of this case. She testified that, after executing the deed, Jane E. Bryan handed it to her lawyer and asked him to put it on record that day, and that he said he would. In considering her testimony we bear in mind she owns a mortgage in the sum of $1,000, made and delivered by William W. Miller to her on November 16, 1915, covering another portion of the land described in the deed to him of October 19, 1905. William W. Miller was not present on October 19, 1905, at the execution of the deed, nor is the evi-

dence clear as to when he first learned of it. The deed was not recorded until after the death of both Jane E. Bryan and her lawyer, when, on July 15, 1907, it was filed for record by Allen Miller, acting at that time as administrator of the estate of Jane E. Bryan. The testimony is silent as to when and how the deed got back into the possession of Jane E. Bryan and thence into the possession of her administrator. On October 22, 1906, Jane E. Bryan conveyed to the Oregon-Washington Railway & Navigation Company, for right of way purposes, a portion of the land described in her deed to William W. Miller. On January 15, 1907, Jane E. Bryan, by a warranty deed acknowledged before her same lawyer, acting at that time as a notary public, conveyed to Allen Miller certain property which included the property in controversy here. That deed was filed and recorded two days later, and the property described in it is a portion of the land described in the deed from her to William W. Miller. Allen Miller and wife several times mortgaged the property they finally sold to the respondent. The Eastern Railway & Lumber Company operated a mill near by, and shortly after Allen Miller acquired the property from Jane E. Bryan, continuous complaint and threatened litigation on his part against the lumber company on account of sawdust and other debris from the mill resulted in the purchase, on September 25, 1911, by the lumber company from Allen Miller and wife, of the seven and one-half acres, ever since owned, occupied and greatly improved by the lumber company. The consideration for this transfer was four thousand dollars, and the property was a part of that described in the deed of October 19, 1905, by Jane E. Bryan to William W. Miller, and also in the deed of January 15, 1907, by Jane E. Bryan to Allen Miller. In the years 1912 and 1913, Allen Miller and wife gave mortgages upon the

property now owned and occupied by the respondents Stephens and wife, who, through foreclosure proceedings in the year 1916, became the purchasers at the sheriff's foreclosure sale. This property now owned by them was a part of that described in the deed of Jane E. Bryan to William W. Miller, and also in the later deed of Jane E. Bryan to Allen Miller. There is abundant testimony in the record to show that, from the time Allen Miller received his deed from Jane E. Bryan in January, 1907, until he disposed of the properties involved in this action, he occupied, used, let, paid taxes on, and in good faith claimed it as his own, within the knowledge and without any protest from William W. Miller, both before and after he became twenty-one years of age, other than the making and delivery by him of a quitclaim deed to appellant about April 27, 1916.

Shortly after the conveyance to Allen Miller, an attorney for the respondent lumber company, engaged in settling the complaints of Allen Miller, called at his home and discussed the matter with Jane E. Bryan, who formerly had been handling the property as her own. Concerning that conversation, the attorney testified at the trial in this case as follows:

"I went right over to see Jane Bryan to see what could be done. It was in the latter part of February, 1907. I asked Mrs. Bryan who owned that property. She told me Allan Miller owned it, that she had deeded it to him, I think, about the month of January, 1907. It was then I called her attention to this deed I had seen in Landrum's office to Willie Miller. She told me that Landrum and Miller (meaning Allen Miller) had come to her when threat was made to bring suit on obligations they owed on different notes; that Landrum had suggested that this deed be made and put with him and that she had made the deed with the instruction that it be returned to her when she called for it. That she had asked Landrum for it and was told that it had

been mislaid. She seemed surprised that the deed was still in existence." ·

This testimony was admitted over the objection of appellant and constitutes the principal assignment of error on the appeal. We think the testimony was admissible. It is perfectly clear the controversy here hinges upon the question of the delivery of the deed— the final act without which all other formalities are ineffectual to the transfer by deed of the title to land. True, the delivery of a deed need not be directly or immediately to the grantee, but it must pass beyond the control of the grantor, which of itself is a question of intention to be determined as a fact by a consideration of all the surrounding circumstances. The rule suggested by appellant and found in 1 Devlin on Deeds (3d ed.), § 281a: "The grantor's acts and declarations made or done in his own interest several months subsequently to his delivery of the deed are not admissible in evidence as showing his intent in delivering the deed," is not applicable here, because, at the time the grantor made the declarations referred to in the testimony complained of, she had already sold and delivered possession of the land to another, and hence had no self-interest to subserve by those declarations. Again, it is contended that declarations of the grantor, made after parting with his title and in disparagement of it, are inadmissible when made in the absence of the grantee. But the rule assumes the very thing in dispute here, namely, delivery of the deed, which is essential to the transfer of the title. Both reason and authority are to the effect that, if the intention of the grantor in delivering a deed is doubtful or equivocal, evidence of subsequent acts of the grantor is competent as tending to show what the grantor's intention was at the time of the delivery of the deed to a third person. *O'Brien v. O'Brien,* 19 N. D. 713, 125 N. W.

307; *Williams v. Kidd*, 170 Cal. 631, 151 Pac. 1, Ann. Cas. 1916E 703.

The consideration of this assignment of error disposes of all other assignments made by appellant as to the admissibility of other evidence and leaves the case, restricted, as it has been, to the consideration only of the validity of the deed to William W. Miller, to be determined upon the sufficiency of the evidence to justify the judgment. Practically all, or at least all of the controlling parts, of the evidence has been set out so as to obviate the necessity of any repetition or analysis to fortify the conclusion, already mentioned, that the judgment is correct; and it is hereby affirmed.

MACKINTOSH, FULLERTON, MAIN, and TOLMAN, JJ., concur.