[No. 18834.   Department One.   March 13, 1925.]

JOHN REILLY *et al., Appellants*, v. S. B. HOPKINS *et al.,
Respondents.*[1]

ACTIONS (24) — PLEADING (82) — MISJOINDER OF CAUSES.   A de-
murrer for misjoinder of actions is properly sustained where a cause
for rescission of a contract for the purchase of land, bought against
the vendor, was coupled with one against the broker for damages
for false representations inducing the sale; as the law does not
permit the disavowal and affirmance of a contract in the same
complaint.

DEEDS (9)—VENDOR AND PURCHASER (63, 160)—DESIGNATION AND
DESCRIPTION OF PARTIES—RESCISSION—DEFECT IN TITLE.   Designating
the grantee by the word "trustee" will be considered as *descriptio
personae* only, in the absence of anything in the deed or any proof
to show the existence of a trust; and does not amount to a defect
in the title warranting a rescission.

VENDOR AND PURCHASER (60, 149)—RESCISSION BY PURCHASER—
FRAUD.   The purchaser of arid land is not entitled to rescind the
sale and recover purchase money for the vendor's fraud in repre-
senting that the water rent was but $1.50 an acre, where it appears
that, on making his own investigation, he was fully informed that
the rent was $10 per acre and was entirely satisfied with the deal,
except as to the amount of the rent.

APPEAL (426)—REVIEW—ERROR NOT AFFECTING THE RESULT.   Error
cannot be assigned on the rejection of evidence that could not have
changed the result.

Appeal from a judgment of the superior court for
Spokane county, Lindsley, J., entered March 24, 1924,
upon granting a nonsuit, dismissing an action for re-
scission, tried to the court.   Affirmed.

*R. L. Edmiston* and *Fred M. Williams*, for appel-
lants.

*O. C. Moore*, for respondents.

MAIN, J.—This action, as originally brought, was
against S. B. Hopkins and wife and one W. D. Godefroy

[1] Reported in 234 Pac. 13.

as defendants. The complaint sought rescission as against Hopkins and wife and damages for fraud against Godefroy. To the complaint a demurrer was interposed and sustained on the ground that there was an improper joinder of causes of action. Thereafter an amended complaint was filed against Hopkins and wife alone. After the issues were joined, the case came on for trial before the court without a jury. At the conclusion of the plaintiffs' evidence, the defendants moved for a dismissal, and this motion was sustained and a judgment of dismissal entered, from which the plaintiffs appeal.

The facts may be summarized as follows: The appellants were the owners of a large tract of land in Canada. The respondents were the owners of a tract of land in Stevens county which was under the Fruitland Irrigation District and to a considerable extent had been set to orchard. The appellant Mr. Reilly had been a farmer in eastern Washington for the past forty-five years, though for the four years preceding the trial he had resided in the city of Spokane. He had had an extensive experience in farming, though he had had nothing to do with irrigated lands. The respondent S. B. Hopkins was a physician and surgeon and had actively practiced his profession in the city of Spokane for a number of years. Farming was a side issue with him.

Some time in November, 1922, Mr. Reilly was introduced to Godefroy and a talk took place between them relative to the exchange of his lands in Canada for those of the respondents in Stevens county. As a result, about the middle of that month the appellants Godefroy and one Morrison visited the Stevens county land. They looked it over somewhat, but Mr. Reilly states that, owing to the price which was placed upon it, he was not interested. He was encouraged to give

a more thorough examination to the place than he was inclined to do. They were there for about two hours and the property was looked over to some extent, the weather being favorable for such investigation. They returned to Spokane, where all of the parties resided, and nothing was done about the matter for some time. Mr. Reilly occasionally visited Godefroy's office and had some talk with him. As a result, on February 21, 1923, an agreement was executed by which the appellants and the respondents agreed to exchange properties. Neither of the appellants, until about two weeks prior to this time, had had any talk with either of the respondents.

Mr. Reilly testified that, about two weeks before the contract was signed, he and Godefroy visited Dr. Hopkins' office and there discussed the matter with him. Up to this time it cannot be found from the evidence that Godefroy was the agent of the respondents. At this conversation Mr. Reilly testified that Dr. Hopkins said that he could depend upon the representations of Godefroy, or words to that effect. Dr. Hopkins, called as a witness by the appellants, unequivocally denied any such statements. After the contract was signed, an abstract of the Stevens county land was delivered to the appellants. It was examined by a lawyer of Spokane of well known ability. The title was approved except as to an incidental matter or two which are not here material. After the abstracts were approved, deeds were exchanged.

Sometime during the month of May, 1923, the appellants sent their son and another person with certain equipment to Stevens county to take possession of the land. When they arrived there they found in possession one George Presley, who declined to vacate, claiming that he would not surrender possession until a claim for services which he had had been satisfied.

Thereafter an action was brought against him, by agreement of the parties, in the name of the appellants in this action, and it was understood that the expense thereof should be borne by Dr. Hopkins. After Presley was evicted the appellants had possession of the property.

On May 11, 1923, the appellants gave notice to the respondents that they rescinded the exchange of properties. Thereafter the present action was brought and resulted as above stated. In the complaint there are a number of charges of fraud and the evidence took a wide range. Upon the trial the testimony of Mr. Reilly, as will be hereinafter pointed out, reduced the charges of fraud to a single issue.

The appellants first complain of the ruling of the trial court in sustaining the demurrer to the original complaint. The action as against Dr. Hopkins and wife was one for rescission, coupled with an effort to recover damages from Godefroy on the ground of fraud. So far as the action was one for rescission, it disavowed the contract and sought recovery of the consideration which had passed. So far as it was an action for damages against Godefroy, it affirmed the contract and sought recovery thereon. The law does not permit the disavowal and affirmance of a contract in the same complaint. In *Hager v. Scott*, 125 Wash. 635, 216 Pac. 840, it is said:

"Appellants might have brought either one of two actions: one for the rescission and recovery of the purchase price, and the other, a suit for damages because of the false representations and the deceit resulting from them, retaining the property. They have brought the first kind of action. It is entirely in equity. The other, to-wit, retaining the property and suing for damages, would have been one in law. Since we have concluded that Mrs. Scott did not own or sell any interest in the property, the only action that was main-

tainable against her was one, not for rescission, but for deceit. It is true, as often stated by the books, that, in an action to rescind, a plaintiff may recover not only the purchase price paid, but also such damages as are incidental to the rescission, such as the loss plaintiffs may have suffered in undertaking to hold or operate the property; but only incidental damages can be recovered in such an action.''

There is some discussion in the briefs relative to the title to the Stevens county property. At the time the agreement mentioned was made, the title to this property stood in the name of ''E. M. Ehrhardt, trustee,'' to whom it had been conveyed by warranty deed in statutory form. Prior to the time of the exchange of deeds between the parties to this action, the property had been reconveyed to the respondents. The deed conveying the property to Ehrhardt, trustee, was of record at the time of the entire transaction and it undoubtedly appeared in the abstract furnished the appellants. There is nothing in the deed by which it could be inferred that the use of the word ''trustee'' was anything more than descriptive. It did not constitute a defect in the title. In 18 C. J. p. 275, it is said:

''Words designating the representative or official capacity of the grantee may be only descriptio personae and will be construed accordingly, unless it can be inferred to the contrary from the instrument, especially where there is an absence of all proof tending to show the existence of a trust estate, and there is none created by the deed.''

In *Andrews v. Atlanta Real Estate Co.*, 92 Ga. 260, 18 S. E. 548, it is said:

''The better and safer construction is to hold that the word 'trustees,' wherever it occurs in the deed, is mere surplusage, and ought to be rejected in reading the conveyance and adjudicating on its legal effect.''

In *Hume v. Indiana Nat. Life Ins. Co.*, 155 Ark. 466, 245 S. W. 19, it is said:

"The mere fact that the lands were held under a deed of conveyance to Evans under the designation 'H. M. Evans, Trustee,' was not, of itself, sufficient to create a trust."

If the word "trustee" had any significance other than being merely descriptive and was an issue in the case, appellants had the right to offer oral testimony with reference thereto. *Railroad Co. v. Durant*, 95 U. S. 576.

Whether defect of title will furnish a basis for rescission or whether the only remedy is for breach of warranty is a question which is not necessarily here involved and will be neither discussed nor decided.

Coming now to the issue of fraud. Upon the trial, Mr. Reilly testified that Godefroy had stated to him that none of the property in the Fruitland Irrigation District had passed to the district because of the failure of owners to pay assessments or water taxes, and that when the delinquent assessments had all been paid the water rent per acre per year upon the land would be $1.50, as against $10 which it had previously been. Mr. Reilly expressed his entire satisfaction with the land, and his only complaint was that the water rent would be more than $1.50 and that considerable of the property in the district had been lost to the owners by reason of failure to pay the water taxes. An excerpt from his testimony is as follows:

"A. The ranch would have been very satisfactory if it wasn't for the water being misrepresented. Very satisfactory. I never said a word to anybody about the land not being satisfactory. It was all satisfactory but the water. The Court: Everything was, all but the water? A. Yes, sir. I would be glad to have it yet if I could have the water for what I thought I could get it for. Mr. Moore. And the only trouble

with the water was the high cost; is that true? A. Yes, sir.''

From this it will be seen that the issue of fraud has become a narrow one.

The question then arises whether the statements of Godefroy, assuming that they were representations of fact and not of opinion, made a *prima facie* showing of fraud. The appellants called as a witness one A. E. Vanderspeck, who was the general manager of the North Pacific Mortgage Company. Mr. Reilly, after having made the agreement for the exchange, had applied to him for a loan and some talk took place between them as to what the cost of water for the land would be. An excerpt from Vanderspeck's testimony, as it appears in the statement of facts, is as follows:

''A. I raised the question whether ten dollars per acre irrigation charge wouldn't be rather heavy for any kind of farming except orcharding. He did not think so. He thought that even with growing alfalfa or dairying the land could stand a charge of ten dollars an acre for irrigation charges. Q. I call your attention to defendant's exhibit 1 for identification and ask you to glance over it and state whether you ever saw it before, or not? A. Yes, I have. This statement was given to me by Mr. Godefroy at the time of our first conversation on this loan. Q. Was Mr. Reilly present? A. Mr. Reilly was present; he was standing next to me. We were both standing in front of the counter, and from this statement I secured the information that there was a charge of ten dollars an acre against the land. Q. Was this letter called to Mr. Reilly's attention? A. Yes. I was reading it while Mr. Reilly was standing next to me, and I said, 'Water rent, $10 per acre; isn't it rather heavy and you want to pull out the orchard? Why you can't make it that way.' He said 'Yes,' he thought he could.''

It thus appears that the appellants did not depend upon getting water for the land at $1.50 per acre.

Assuming that the appellants had the right to rely upon the statements of Godefroy as to the cost of the water, they were not misled thereby, as they did not rely thereon.

The appellants complain of the ruling of the trial court in rejecting certain evidence offered by them. It will be unnecessary to discuss these rulings in detail. If the evidence excluded had all been admitted it would not have changed the result.

The judgment will be affirmed.

TOLMAN, C. J., BRIDGES, and HOLCOMB, JJ., concur.