[No. 19985.  Department One.  October 27, 1926.]

# W. D. GODEFROY, *Appellant*, v. JOHN REILLY *et al.,* *Respondents.*[1]

[1] TRIAL (93)—INSTRUCTIONS TO JURY—APPLICATION TO PLEADINGS AND ISSUES. Instructions reviewed in detail and held not to constitute a departure from the issues or to present a broader issue than permitted by a decision upon a former appeal.

[2] APPEAL (493)—REMAND FOR FURTHER PROCEEDINGS—POWERS AND DUTIES OF LOWER COURT. A decision upon appeal, reversing a judgment withdrawing a defense from the consideration of the jury for the reason that there was no substantial evidence to support it, does not limit the retrial to the particular issue tried; but throws open the whole case for retrial upon any issues in the case.

[3] APPEAL (473)—SUBSEQUENT APPEAL—FORMER DECISIONS AS LAW OF THE CASE. A decision upon a former appeal that a certain judgment was not *res judicata*, operating as an estoppel, becomes the law of the case and is conclusive on a subsequent appeal.

[4] FRAUD (18)—EVIDENCE—ADMISSIBILITY. In an action to recover a commission on the exchange of lands, defended on the ground of fraud practiced upon the defendant inducing the trade, evidence of the value of defendant's lands traded is competent to show that he paid something of value and the amount of the consideration paid.

[5] SAME (18). In such an action it is admissible for the defendant to show that the lands he obtained were subject to a bonded indebtedness, tending to support his claim that the status of the property had been misrepresented to him.

[6] SAME (18). In such an action, it is proper to exclude evidence of knowledge communicated to the defendant as to the matters misrepresented, where it appears that such knowledge came to him too late to be of any avail in preventing the trade.

[7] TRIAL (134)—VERDICT—CONSTRUCTION AND OPERATION. In an action for commissions in an exchange of property, defended on the ground of fraud practiced upon the defendant, in which he counterclaimed for damages, a verdict for the plaintiff without awarding any damages, authorized by instructions of the court, is to be construed as a finding that defendant's damage was

[1]Reported in 250 Pac. 59.

equal to the plaintiff's claim and shows an intent to find for the defendant.

[8] FRAUD (23, 26)—DAMAGES—MEASURE—INSTRUCTIONS. In such an action, the measure of damages is the difference between the actual market value of the property he received and what its market value would have been had it been as represented.

[9] FRAUD (23)—DAMAGES—MEASURE. Since fraud without damage is not remedial, in an action for commissions in the exchange of property, defended on the ground of fraud, the defendant must show damages under the rule of the difference between the actual market value of the property he received and its market value if it had been as represented.

[10] FRAUD (23, 26)—DAMAGES—MEASURE—INSTRUCTIONS. In an action for commissions on an exchange of property, defended on the ground of fraud practiced upon the defendant, for which he counterclaimed, the instructions and evidence should authorize, in case of misrepresentations, a recovery of the difference between the amount of the defendant's loss and the agreed upon commissions on the one hand, or for the defendant's loss if it exceeds the amount of the agreed commission on the other hand.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered December 22, 1925, upon the verdict of a jury in favor of the defendants, in an action for a broker's commissions. Reversed.

*O. C. Moore,* for appellant.

*R. L. Edmiston,* for respondents.

FULLERTON, J.—On February 21, 1923, the respondents Reilly entered into a contract with one S. B. Hopkins and his wife Norma Hopkins by which they agreed upon an exchange of properties. The property of Reilly and wife was situated in the Dominion of Canada, and the property of Hopkins and wife was situated in Stevens county, in this state. Subsequently, the contract was consummated by the exchange of deeds and other proper conveyances. The negotiations leading up to the contract were conducted by the appellant Godefroy, who was a real estate broker

doing business at Spokane. The contract of exchange contained the following recital:

"It is mutually understood and agreed that [Godefroy] is acting as agent for both parties hereto, and by reason of said services performed, parties of the first part and parties of the second part, [the parties to the contract] each for themselves, agree to pay to the said agent a commission of 2½ per cent of their above valuation of the property conveyed by them."

The valuations placed on each of the properties by the parties for the purpose of exchange was $65,600.

After the exchange had been consummated, the Reillys conceived that they had been defrauded thereby, and they brought an action against Hopkins and wife and Godefroy, in which they sought a rescission of the contract as against Hopkins and wife and a judgment in damages against Godefroy. To the complaint a demurrer was interposed on the ground of misjoinder of causes of action, which demurrer the trial court sustained. Godefroy was thereupon dismissed from the action, an amended complaint was filed, and the action was continued against Hopkins and wife. At the trial, on the conclusion of the evidence on the part of the Reillys, a judgment of dismissal was entered against them. This judgment this court affirmed on appeal. *Reilly v. Hopkins*, 133 Wash. 421, 234 Pac. 13.

Godefroy had theretofore begun an action against the Reillys to recover the commission agreed to be paid in the contract of exchange. The Reillys defended on the ground that they had been induced to enter into the contract by the falsity and fraud of Godefroy, whereby they had parted with a valuable property and received a worthless property in return. The action for rescission first mentioned had not been determined at the time of the filing of the answer, and the relief sought was that Godefroy's action be stayed until it

was so determined, and that they have and recover from Godefroy the value of the property, namely, $65,-600, or such sum as might necessarily be expended in recovering the property. A trial of the action was entered upon before a jury, when, at the close of all of the testimony, a challenge to the sufficiency of the evidence to sustain the defense was sustained. The jury was thereupon discharged and a judgment was entered in favor of Godefroy for the full amount claimed. On appeal to this court, the judgment was reversed and the cause remanded for further proceedings, on the ground that there was sufficient evidence to take the defendants' case to the jury on the question of fraud. *Godefroy v. Reilly,* 134 Wash. 163, 235 Pac. 8.

On the remand of the cause, there was a trial in which the court submitted the entire issue to the jury, instructing them that they could return any one of three verdicts, namely:

"One, a verdict for the plaintiff, and assessing his recovery in the sum of $................; another, a verdict for the defendants, and assessing their damages in the sum of $................; and third, a verdict for the defendants, without the assessment of any damages."

The jury returned a verdict in accordance with the last of the permitted forms, on which a judgment was entered to the effect that the plaintiff take nothing by his action and that the defendants recover their costs.

[1] Of the errors assigned which we do not conceive to be well taken, but which are necessary to be noticed because of the result we have reached, the first is that the court did not sufficiently limit the issues on its submission of the cause to the determination of the jury. The assignment has its foundation in the opinion and direction of this court in the former appeal of the cause. (134 Wash. 163, 235 Pac. 8.) It will be re-

membered that, on the former trial, the trial court took
the question of fraud of the plaintiff from the jury,
discharged the jury, and entered a judgment in favor
of the plaintiff for the full amount demanded by him
in his complaint, and that we held this to be error. In
the course of the opinion, we used this language:

"The chief and vital questions are whether there was
evidence on the part of appellants sufficient to carry
the case to the jury, and whether or no the judgment
in *Reilly v. Hopkins,* 133 Wash. 421, 234 Pac. 13, was
determinative of the issues here. After a careful study
of the record, we are convinced that there was in this
case sufficient evidence on the part of the appellants
to carry to the jury the question of the making by re-
spondent of representations to the appellants, upon
which they relied, to the effect that no lands in the irri-
gation district had been forfeited or sold to the district
because of delinquent water assessments, and that the
assessment of ten dollars per acre was a special charge
for one particular year because of the necessity of cer-
tain improvements and repairs, not likely to be con-
tinued in effect or repeated, and that thereafter the an-
nual water assessments would not exceed $1.50 per
acre. . . . A jury might have found that the con-
versation did not extend to the matter of the $10 per
acre charge, or, if so, that it had reference to such
charge for only one particular year and not to a con-
tinuing annual charge of that amount. . . . We
hold that the issues hereinbefore pointed out should
have been submitted to the jury."

The trial judge, in stating the issues to the jury said:

". . . and for a further and affirmative answer,
defense and cross-complaint defendants alleged that
plaintiff as agent of the owner approached these de-
fendants and submitted a proposition to sell the Hop-
kins land in Stevens county clear of encumbrance and
irrigated with ample water from the municipal irriga-
tion district at a cost of $1.50 per acre per year there-
for, which said Hopkins lands are specifically described

in Exhibit 'A,' and offered to cause the alleged owners thereof to convey the same to defendants upon certain terms; that thereafter about February 21, 1923, plaintiff for the purpose of deceiving and defrauding defendants, as agent of said alleged owners, Hopkins and wife, again sought defendants on behalf of said Hopkins and offered to sell said Stevens county land and take in full payment the Canadian land and $8000.00 in notes owned by defendants, and then and there stated that no owner of any of the 6,000 acres of land composing said irrigation district in which said Hopkins land was located had ever permitted any of their lands to go delinquent for failure to pay the irrigation assessments, or to permit any part thereof to be sold by the district, and that the water would cost defendants only $1.50 per acre per year; that said defendant John Reilly, being in a weakened physical condition and impaired in mind and body and being ignorant of irrigation farming and the operation of irrigation districts, and relying implicitly upon the truth of said representations, and being assured that he could rely upon said representations, signed Exhibit 'A'; that said statements and representations were made as material inducing facts for defendants to rely on, and each was a material inducement and were all relied upon by defendants in signing said contract; that each and all of said representations were false and untrue, and were known by plaintiff at the time of making the same to be false and untrue, and made for the purpose of defrauding the defendants; that said plaintiff had been agent of said lands as to the sale thereof for a number of years, and knew that the same had been sold by and bought in by said irrigation district for delinquent water assessments; that the charge for water was and is $10.00 and upwards per acre per year; that the irrigation district had sold much of the lands within its bounds by reason of the failure of the owners to pay the assessments for water thereon; that the said Hopkins land had been sold by the irrigation district for delinquent water taxes in February, 1922, for the year 1921, and had also been sold the second time in February, 1923, for the delinquent taxes for the year 1922,

and that the said irrigation district is wholly unable to supply any water to large portions of lands in the districts, and that the annual water charges for 1923 will be $11.00 per acre, and probably will go higher each year, all of which was known to plaintiff on the date of Exhibit 'A' and unknown to defendants, and that by reason thereof defendants pray judgment against the plaintiff for damage in the sum of $65,000. All of which allegations of said affirmative answer and cross-complaint are denied by the plaintiff in his reply thereto, excepting that he admits negotiating with defendants about the date mentioned with respect to the transaction described in paragraph 1 of said cross-complaint.

"In the affirmative answer, defense and cross-complaint of the defendants you will find further allegations of alleged misrepresentations alleged to have been made by the plaintiff as an inducement for the defendants to enter into the said contract, Exhibit 'A,' but you are instructed to disregard all such allegations for the reason that the defendant's testimony shows that the defendant Reilly did not rely thereon in making and entering into said contract marked Exhibit 'A'."

And further, in his more specific instructions, said:

"Therefore, if you find from clear, cogent and convincing weight of the evidence in this case that the plaintiff, while acting as the agent for the defendants, stated to the defendant John Reilly that no owner of any of the land composing the Fruitland Irrigation District, in which the Hopkins land was located, had ever permitted any of their lands to be forfeited or sold by reason of failure to pay the irrigation assessments, or that the water would cost defendants only $1.50 per acre per year; that such representation or representations so made, if any, were material facts; that they or one of them were false; that plaintiff made the same, if at all, either knowing them to be false or recklessly without knowledge of their truth or falsity, but with the intention that the same should be acted and relied upon by the defendant Reilly; that the defendant believed such representation or representa-

tions, if any, to be true and acted and relied thereon, and that the defendant Reilly was thereby induced to execute said contract and was thereby damaged, then the plaintiff is not entitled to recover in this case, but on the contrary, in such event the defendant would be entitled to recover from the plaintiff the damages thereby sustained, if any.''

It would seem that, were we to concede that the appellant correctly interprets the effect of our opinion on the former appeal, there was not here any such radical departure from the issues defined as to warrant the conclusion that a broader issue had been submitted to the jury than the opinion permits. But it is not our view that the appellant correctly interprets the opinion.

[2] An appellate court may, no doubt, where the error in the trial relates to a particular issue only, which does not depend for its proper understanding or trial on other issues presented, reverse and remand the cause for trial on the particular issue erroneously tried, and on that issue alone. But the usual and general rule is that, upon a reversal for a new trial, the whole case is open. Each of the parties is at liberty to retry the cause on all of the issues, those decided in his favor on the first hearing as well as those on which the determination was against him. When the court intends that a specific issue shall alone be tried, it will give instructions to that effect, in unmistakable language. In this instance we gave no such instructions. In the part of the opinion quoted, we but stated the issues which in our view had substantial evidence in their support. We did not say, nor did we intend to say, that these particular issues should alone be tried.

[3] It is next urged that the respondents are estopped from counter-claiming in damages by reason of their action to rescind brought against Hopkins and his wife with whom the contract of exchange was en-

tered into. But this question was presented and determined on the former appeal of the cause. In that case we said:

"The real question seems to be whether or not the judgment in *Reilly v. Hopkins* is *res judicata* of these matters. It may be admitted that the principle of *res judicata* applies, not only to the parties, but to those in privity with them; but we see no privity between respondent and Hopkins. Respondent claims no right by, through or under Hopkins. That he testified in the *Hopkins* case, might, under some circumstances, cause him to be bound by an adverse judgment, but we have been cited to no authority which holds that, under the conditions here shown, he can now clothe himself with the mantle of rectitude which that judgment casts upon Hopkins. There are a number of reasons why he should not be permitted to do so. One or two will suffice. First, Reilly and Hopkins were dealing at arm's length, and the action between them was one to rescind on the ground of fraud. Since fraud is never presumed, every inference in that case had to be drawn in favor of Hopkins. Here, respondent sues as the agent of Reilly, thus alleging a fiduciary relationship; and what might be wholly insufficient to warrant a holding of fraud on the part of Hopkins might well satisfy either a jury or court that the agent had so far failed in his duties to his principal, and so far violated his trust and the confidence reposed in him, as to defeat his right to recover compensation for his services. Moreover, the issues were different in other respects and the evidence differed also. We see no reason why this question does not fall squarely under the rule applied in *Grant v. Ten Hope*, 117 Wash. 531, 201 Pac. 750."

[4] The court permitted the respondent John Reilly to testify to the value of the Canadian lands which he exchanged for the orchard lands in Stevens county. The objection is that it furnished no rule for the admeasurement of damages. If this was the sole purpose of the testimony, the objection would be well

taken, but it was competent on another issue. In order to recover damages against the appellant, the respondents were obligated to show that they parted with something of value in obtaining the land, and the evidence was competent for that purpose. It may be that, under the circumstances of the particular case, it would be presumed that the respondents paid a valuable consideration for the land, but they were not compelled to rely on the presumption. They were entitled to show, not only that they paid a valuable consideration for the land, but the amount of the consideration so paid.

[5] The respondents were permitted to introduce in evidence the record of a court action, had in connection with the organization of an irrigation district in which the orchard lands were situated, for the purpose of showing that a bonded indebtedness was created with which the lands were chargeable. It is urged that this testimony was inadmissible because it was not shown that any part of the bonds thereby authorized were ever issued. But the record, as we view it, does not support the fact assumed. While we have discovered no direct evidence showing the amount of the issue, it abundantly appears that there was in fact such an issue. The appellant himself so testified, and the record elsewhere supports the fact. The evidence was perhaps not of great moment, since the amount of the issue was not disclosed, but the fact that a bonded indebtedness was authorized under which the lands could be charged, tended to support the claim of the respondents that the appellant had misrepresented to them the status of the property.

[6] The appellant offered in evidence an abstract of title to the orchard lands furnished the respondents by the appellant, and also the letter of an attorney to whom the respondents had submitted the abstract for

an opinion as to the sufficiency of the title. These tended to show that the respondents then acquired knowledge of certain of the matters which they accused the appellant of falsely representing. The abstract was furnished and the letter was submitted after the contract of exchange had been executed, but prior to the time it had been consummated by the exchange of the instruments of conveyance, and the court excluded the proffered evidence on the ground that the respondents could not refuse to consummate the contract because of the appellant's misrepresentations. In so ruling we think the court was right. There was no evidence, or offer to produce evidence, that the other party to the contract of exchange in any way misrepresented the situation, or that he aided or abetted the appellant in so doing. Without some such showing, the appellant's misrepresentations were not chargeable to him, and would furnish no defense to a suit to enforce the contract. The knowledge the respondents acquired by the abstract and letter therefore came too late for them to avail themselves of it. It thus constituted no defense to the appellant's misrepresentations.

[7] The jury, as we have before noticed, were instructed that they might return a verdict in favor of the respondents without the assessment of damages, and returned such a verdict. The appellant contends that he is entitled to a judgment on the verdict, arguing that the verdict was equivalent to a finding that the wrongs of which the respondents complain caused them no damage, and since their defense was an offset, because of injury to their damages, "the defense was obliterated." But the verdict is capable of another interpretation. It may be that the jury found that there was a damage arising from the injury equal in amount to the appellant's claim. If such be the fact,

then a verdict for the respondents was within the province of the jury. But the better answer is that such a judgment would be contrary to the evident intent and purpose of the jury. Clearly, the jury intended to find for the respondents, and it would be a perversion of that intent and an injustice to the respondents to construe it as a verdict for the other party.

[8] But there was error in the instruction of the court as to the measure of damages. The court instructed the jury that the measure of damages is the difference between the market value of the property which the respondents transferred to Hopkins and wife pursuant to the contract of exchange and the market value of the property which they received in exchange, whereas the rule is that the measure of damages is the difference between the actual market value of the property the respondents received and what its market value would have been had it been as it was represented. *Parkhurst v. Elliott,* 103 Wash. 89, 173 Pac. 731.

[9] The respondents argue, however, that the error in the instruction is not material; that the relation of principal and agent existed between the respondents and the appellant at the time the misrepresentations were made, and that it is sufficient to defeat recovery of the compensation the respondents agreed to pay the appellant for his services to show that he made false representations concerning the subject-matter of the dealings between them, regardless of the question whether the misrepresentations resulted in injury. But such is not the rule. "Fraud without damage or injury is not remedial." *Miller v. Williamson,* 128 Wash. 124, 222 Pac. 201, and cases there cited.

[10] Since there must be a new trial, it is well to say that, in our opinion, the forms of the verdicts submitted by the court to the jury do not meet the exigencies of

the case. If there were no misrepresentations, or were misrepresentations not resulting in injury to the respondents, the appellant is entitled to recover the commission agreed to be paid him; or, if there were misrepresentations resulting in injury, and the loss suffered thereby is less than the agreed commission, the appellant is entitled to recover the difference between the amount of the loss and the amount of the agreed commission. On the other hand, if there were misrepresentations causing a loss to the respondents, and this loss equals the amount of the agreed commission, the respondents are entitled to a verdict in their favor without more; if the amount of the loss exceeds the amount of the agreed commission, they are entitled to a verdict for the excess of loss over the commission. On the new trial, the instructions of the court and the forms of verdict should meet these conditions, that there may be no room for controversy as to the effect of the findings of the jury.

The judgment is reversed, and the cause remanded for a new trial.

TOLMAN, C. J., HOLCOMB, MACKINTOSH, and BRIDGES, JJ., concur.