[No. 20748.  Department Two.  January 3, 1928.]

# W. D. Godefroy, *Appellant*, v. John Reilly *et al.*, *Respondents.*[1]

[1] Appeal (473)—Subsequent Appeals—Former Decision as Law of Case. A decision on a former appeal is binding upon inferior courts and the supreme court until the decision is overruled; and objections at a subsequent trial to evidence held admissible on appeal from a former judgment, are properly overruled.

[2] Appeal (389)—Review—Amendments Regarded as Made. A defect in a pleading is not ground for reversal, where neither party was denied the right to introduce evidence because of the defect, which could have been cured by a trial amendment without prejudice.

[3] Appeal (475) — Subsequent Appeals — Questions Concluded. The fact that a plea of election of remedies was determined on a prior appeal appears from the fact that it was urged in the briefs and inferentially decided by referring to the plea as an "estoppel" to claim the damages sought.

[4] Election of Remedies (1)—Causes Subject to Election— Want of Privity. The doctrine of election of remedies does not apply to one of the parties to a contract and a third person, a stranger thereto, as to whom there was no privity.

[5] Same (5)—Validity of Election—Mistake or Ineffectiveness. A party who mistakes his remedy is not concluded by an election of remedies.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered February 19, 1927, upon the verdict of a jury rendered in favor of the defendants, in an action for a broker's commissions. Affirmed.

*O. C. Moore,* for appellant.

*John M. Gleeson,* for respondents.

Holcomb, J.—That this "tangled skein" between these same parties has received previous considera-

[1]Reported in 262 Pac. 639.

tion before this court, several times, is evidenced by the reported decisions in 134 Wash. 163, 235 Pac. 8, and 140 Wash. 650, 250 Pac. 59; while the same facts were collaterally involved in the previous case of *Reilly v. Hopkins,* 133 Wash. 421, 234 Pac. 13.

. .This case, a suit for $1,640 commission for the sale of real estate, was instituted in the superior court on May 29, 1923. Just previously, May 21, 1923, these respondents, as plaintiffs, had instituted an action for the rescission of the contract involved in the controversy, as against Hopkins, and for damages for fraud and deceit, as against Godefroy.

In untangling the skein, it is necessary, first, to note that, in the action against Hopkins and Godefroy, a demurrer was interposed, and sustained on the ground that there was an improper joinder of causes of action. Thereafter, an amended complaint was filed against Hopkins and wife alone. Upon a dismissal being granted by the trial court in favor of Hopkins and wife against plaintiffs, an appeal was taken, which resulted in affirming the judgment sustaining the demurrer for misjoinder of causes of action; the court holding (133 Wash. 421, 234 Pac. 13, *supra*) that,

" . . . so far as the action was one of rescission, it disavowed the contract and sought recovery of consideration . . . So far as it was an action for damages against Godefroy, it affirmed the contract and sought recovery thereon. The law does not permit disallowance and affirmance of a contract in the same complaint."

The dismissal upon the facts, as against Hopkins and wife, was affirmed because Reilly did not rely upon any representations or statements made by Hopkins, but made his own investigation, and upon information he received, was satisfied with the deal and acted thereon.

In the case reported in 134 Wash. 163, 235 Pac. 8, a challenge to the evidence, made by respondent there, in support of the affirmative defense and cross-complaint of defendants, was sustained. Defendants appealed, and the judgment dismissing the cross-complaint was again reversed, this court holding that the evidence was sufficient to present a case for the jury as to the fraud and deceit of Godefroy. Several other matters were incidentally passed upon, the court saying:

"Many questions are raised and discussed which we do not find it necessary to now mention. It will be sufficient to say that, except in the matters hereinafter specifically referred to, we find no error on the part of the trial court.

"The chief and vital questions are whether there was evidence on the part of appellants sufficient to carry the case to the jury, and whether or no the judgment in *Reilly v. Hopkins, supra,* was determinative of the issues here."

This case, with some apparent inconsistencies and discrepancies, which were for the jury to consider and reconcile, was tried upon substantially the same facts as were adduced in the former trials.

Notwithstanding the insistence and able ingenuity of counsel in seeking to differentiate and avoid the effect of the former adjudications, we are of the opinion that most of the questions here raised were passed upon in the decisions in 134 Wash. 163, 235 Pac. 8, and 140 Wash. 650, 250 Pac. 59, *supra.*

[1] When this court has once decided a question of law, that decision, when the question arises again, is not only binding on all inferior courts in this state, but it is binding on this court until that case is overruled. *Duffy v. Blake,* 94 Wash. 319, 162 Pac. 521; *Guaranty Trust Co. v. Scoon,* 144 Wash. 33, 256 Pac. 74.

Summaries of the issues of law and fact involved may be found in the previous decisions.

At the trial in this case upon the original complaint and the third amended answer and cross-complaint and reply and answer thereto, the trial court very ably simplified and summarized the issues to be determined by the jury under the cross-complaint of respondents, in accordance with the previous decisions of this court, as follows:

(1) That the district in which the Hopkins land lay had ample water at a cost of $1.50 per acre per year.

(2) That no owner of lands in this irrigation district has ever permitted any of their lands to go delinquent for failure to pay the irrigation assessments or permitted any part thereof to be sold.

(3) That large profits had been made for a number of years off the lands.

(4) That there was an abundance of water for irrigating every acre of land in the district.

In the decision in 140 Wash. 650, 250 Pac. 59, we held that the court, in the former trial, from which that appeal came, misinstructed the jury on the question of damages, and held that the measure of damages, if respondents were entitled to recover any upon their cross-complaint, should be "the difference between the actual market value of the property he [respondent] received and its market value if it had been as represented."

We also held in that case that—

"If there were no misrepresentations, or were misrepresentations not resulting in injury to the respondents, the appellant is entitled to recover the commission agreed to be paid him; or, if there were misrepresentations resulting in injury, and the loss suffered thereby is less than the agreed commission, the appellant is entitled to recover the difference between the amount of that loss and the amount of the agreed com-

mission. On the other hand, if there were misrepresentations causing a loss to the respondents, and this loss equals the amount of the agreed commission, the respondents are entitled to a verdict in their favor without more; if the amount of the loss exceeds the amount of the agreed commission, they are entitled to a verdict for the excess of loss over the commission. On the new trial, the instructions of the court and the forms of verdict should meet these conditions, that there may be no room for controversy as to the effect of the findings of the jury."

The trial court, accordingly, instructed the jury strictly in accordance with the foregoing direction. It also, in conformity thereto, submitted to the jury for consideration four forms of verdicts, as follows:

No. 1. A verdict for plaintiff in the full sum of $1,640, with interest from March 24, 1923, at six per cent. to date of trial, which the jury were instructed plaintiff would be entitled to unless the sum was reduced or wiped out by damages sustained by the defendants.

No. 2. A verdict for the plaintiff in case the defendants suffered damages, as explained, less than the agreed commission, in which case the verdict should be for the difference.

No. 3. A verdict for the defendants, to be used in case the damages equaled the amount of the commission, in which case the jury should insert no amount of damages.

No. 4. A verdict for the defendants, to be used in case the damages exceed the amount of the commission, in which case the jury were to insert the excess of the damages above the commission, as instructed.

The jury returned a verdict on form No. 3, simply for the defendants.

Since the instructions and the form of verdict returned at the trial of this case were in strict accord

with our decision in 140 Wash. 650, 250 Pac. 59, there is no merit in appellant's claims 7 and 9 on this appeal.

It is urged that, since the cross-complaint contains no allegation as to either the market or the actual value of the Hopkins land at the date of the exchange, or at any other time, nor any allegation as to what the market or other value of the Hopkins land would have been, had conditions been as the cross-complaint alleged that Godefroy represented them to be, certain evidence received by the court as to such values, and instruction No. 4 given by the court upon the question of damages thereunder, was improperly submitted to the jury, and the jury was thereby directed to return a verdict in favor of the defendants without assessment of damages.

The evidence complained of as having been erroneously received was, first, that of Reilly himself as to the values of his Canadian lands on exchange; second, that of one Taylor as to the market value of the Hopkins land; and for the further reason that Taylor was not qualified as an expert to testify as to the market values, and affirmatively disclosed that he could have no such knowledge as would qualify him to testify on that question.

The testimony of Reilly was held, in 140 Wash. 650, 250 Pac. 59, to be competent, for the reasons there stated. The evidence of Taylor was, also, incidentally passed upon; and his general qualifications as such an expert, as testified to at this trial, were sufficient, so that the weight thereof was a question for the jury.

Instruction numbered 4, complained of, was in accordance with the decisions of this court, both in 134 Wash. 163, 235 Pac. 8 and 140 Wash. 650, 250 Pac. 59.

[2] A critical examination of the cross-complaint discloses that it is somewhat defective in the matters specified by appellant.

But, granting that it is defective, whatever defect there was in it was such as could have been cured by a trial amendment, within the prescriptions laid down in 140 Wash. 650, 250 Pac. 59, *supra*, without prejudice to appellant. Upon the trial, neither party was denied the right to introduce evidence because of the defect, and the case was apparently tried without prejudice, because of the defect in the cross-complaint. In such cases, we have frequently held that there can be no good reason to reverse a judgment and send it back for a new trial, where, after the complaint has been amended, in all probability the same evidence would have been introduced. *Matzger v. Arcade Building & Realty Co.*, 80 Wash. 401, 141 Pac. 900, L. R. A. 1915A 288; *Wright v. Seattle Grocery Co.*, 105 Wash. 383, 177 Pac. 818; *Hahn v. Brickell*, 135 Wash. 189, 237 Pac. 305; *Hubbard v. Hartford Fire Ins. Co.*, 135 Wash. 558, 238 Pac. 569, 240 Pac. 565.

The situation in this case is very similar to that in the *Hubbard* case, *supra*.

The instruction complained of, therefore, based upon the evidence in the case, was correct. Hence, there was no error under either of assignments 1, 2, 3, 4 or 5.

[3] The sixth claim of error is in rejecting the plea of election of remedies and excluding evidence, consisting of the record in the case of *Reilly v. Hopkins*, *supra*, offered in support of that plea, which record, it is urged, conclusively shows that the respondents, previously to interposing their cross-complaint, had, on the same grounds, sued Dr. Hopkins for rescission.

This assignment is very insistently and vigorously argued and appellant stoutly contends that the decision in 134 Wash. 163, 235 Pac. 8, passed upon one of the affirmative defenses, that of *res judicata*, and did not pass upon the question of election of remedies as urged

and presented by him in that case; and that in the decision in 140 Wash. 650, 250 Pac. 59, the court again passed upon the question of *res judicata*, which had not been presented in that case, and failed to pass upon the question of election of remedies raised by him.

We find that in 134 Wash. 163, 235 Pac. 8, by examination of the record and briefs, the same question was urged. While not specifically decided, it was inferentially decided by the quotation heretofore made from that decision.

In the opinion in 140 Wash. 650, 250 Pac. 59, the writer of the opinion referred to the plea as an "estoppel" from counter-claiming in damages, by reason of their action to rescind brought against Hopkins and wife, and it was held that the question was presented and determined on the former appeal of the cause.

The principle of election of remedies is often referred to as estoppel. 20 C. J. 4; *Baker v. Edwards & Son,* 176 N. C. 229, 97 S. E. 16; *Crittenden v. St. Hill,* 34 Cal. App. 107, 166 Pac. 1016; *Warriner v. Fant,* 114 Miss. 174, 74 South. 822; *Kallberg v. Newberry,* 43 N. D. 521, 170 N. W. 113.

[4] Furthermore, the doctrine of election of remedies cannot be applied between one of the parties to a contract and a third person, a stranger thereto, since it is applicable only to the parties to the contract. 20 C. J. 18. There was no privity between these parties. In that first action, these cross-complainants sought damages for deceit against Godefroy.

[5] Conceding that the first action by respondents against Hopkins and Godefroy, including therein allegations and a demand for rescission of the contract, constitutes an election, it was by this court held a mistake in remedy. It further held that, upon the facts, respondents had no such remedy against Hopkins.

This court has always held that a mistake in remedy is not an election. *Gray v. Hickey*, 97 Wash. 278, 166 Pac. 625; *Roy v. Vaughan*, 100 Wash. 345, 170 Pac. 1019; *Harris v. Northwest Motor Co.*, 116 Wash. 412, 199 Pac. 992.

In the last case cited we quoted with approval from 9 R. C. L. 962, as follows:

" 'The principles governing election of remedies are necessarily based upon the supposition that two or more remedies exist. If in fact or in law only one remedy exists, there can be no election by the pursuit of another and mistaken remedy. It is a well-established rule that the choice of a fancied remedy that never existed and the futile pursuit of it, either because the facts turn out to be different from what the plaintiff supposed them to be, or the law applicable to the facts is found to be other than supposed, though the first action proceeds to judgment, does not preclude the plaintiff from thereafter invoking the proper remedy. And likewise a mere mistake in selecting a wrong party does not preclude a party from asserting liability against the person liable when he is discovered. . . . ' "

Those rules and our decisions exactly apply here. See, also: *Nysewander v. Lowman*, 124 Ind. 584, 24 N. E. 355 (a decision written by Judge Elliott); *Cohoon v. Fisher*, 146 Ind. 583, 44 N. E. 664, 45 N. E. 787, 36 L. R. A. 193.

Moreover, as before stated, this question was inferentially passed upon in the decisions in 134 Wash. 163, 235 Pac. 8 and 140 Wash. 650, 250 Pac. 59, and in the petition for rehearing on the Departmental opinion in the 140 Wash. case, appellant earnestly and insistently urged that the doctrine of election of remedies had been confused with that of *res judicata* by the court, and the court had failed to pass upon the proposition of the election of remedies in that case. The petition for rehearing in that case was denied,

thus finally determining that the question at issue had been definitely decided in that and the former decision.

We find no reversible error in the record, and the judgment is affirmed.

MACKINTOSH, C. J., FULLERTON, ASKREN, and MAIN, JJ., concur.

---

[No. 20842.  Department Two.  January 3, 1928.]

FRED E. EDWARDS, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

[1] MASTER AND SERVANT (20-1)—WORKMEN'S COMPENSATION—EXTRA-HAZARDOUS EMPLOYMENT—TRUCK DRIVER. A truck driver, employed by a wholesale merchant in making heavy deliveries to customers, is not engaged in extra-hazardous employment, within Rem. Comp. Stat., § 7674, specifying among occupations declared to be extra-hazardous, "transfer, drayage and hauling," and Rem. 1927 Sup., § 7676, setting forth at length the occupations included in the various accident fund classes, including; "Class 11.  11-1 team and truck driving (includes all warehouses operated by transfer companies)."

Appeal from a judgment of the superior court for King county, Jones, J., entered June 9, 1927, in favor of plaintiff, reversing, on appeal, an order of the department of labor and industries denying plaintiff's claim for personal injuries after a trial to the court. Reversed.

*The Attorney General* and *Mark H. Wight, Assistant,* for appellant.

*Kenneth Durham,* for respondent.

HOLCOMB, J.—Respondent, while employed as a driver, delivering merchandise on a truck belonging to L. Marks & Company, a corporation, and while en-

[1]Reported in 262 Pac. 973.

gaged in its business, was injured on April 13, 1926. His claim for industrial insurance was rejected on the ground that he was not employed in an extrahazardous occupation, as defined in the workmen's compensation act, and he appealed. The lower court reversed the department, and from that judgment the department has appealed.

These are the stipulated facts: L. Marks & Company maintained a truck of considerable weight, such as is commonly used for heavy hauling, for delivery to its customers of merchandise sold them, which delivery constituted a part of the business or operations of that company in the wholesaling of tobacco, cigars, cigarettes and candies. The merchandise so delivered was usually contained in cartons or cases which, in some instances, would weigh as much as two hundred pounds. In conformity with these stipulated facts, the court found the facts, and concluded, as a matter of law, that respondent was engaged in an extrahazardous occupation within the meaning of the law.

[1] The sole question presented is this: Is a truck driver, employed by a wholesale merchant to operate a large truck, such as is commonly used for heavy hauling, maintained by such employer as a part of its business for the delivery to customers of heavy cartons and cases of commodities, engaged in an extrahazardous occupation, within the meaning of the workmen's compensation act?

"Workman means every person . . . , who is engaged in the employment of an employer coming under this act. . . ." Rem. Comp. Stat., § 7675.

"Employer means any person . . . engaged . . . in any extrahazardous work or who contracts with another to engage in extrahazardous work." Rem. Comp. Stat., § 7675.

Section 7674, Rem. Comp. Stat. [P. C. § 3469], as amended in § 1, ch. 182, Laws of 1921, p. 719, specified,

among the occupations declared to be extrahazardous,. "transfer, drayage and hauling."

Section 7676, Rem. Comp. Stat., was amended by § 1, ch. 136, Laws of 1923, p. 373; Rem. 1927 Sup., § 7676, by setting forth at length the occupations to be included in the various accident fund classes, as follows:

"Class 11.   11-1 Team and truck driving (includes all warehouses operated by transfer companies). . . ." Rem. 1927 Sup., § 7676.

Appellant, therefore, contends that an employer being defined as one engaged in any extrahazardous work, which extrahazardous work is, however, specifically enumerated as to the kinds and nature of work which are extrahazardous, under the rule of *ejusdem generis* the meaning of the general term "extrahazardous" is limited to the kinds of work particularly enumerated and designated within the act itself, and quotes from *Parker v. Pantages Theater Co.*, 143 Wash. 176, 254 Pac. 1083, as follows:

"Whether an occupation is in law extrahazardous, or not, depends upon whether the act has so declared it or it has been so found by the industrial insurance department."

It is, therefore, contended that the word "work," as used in the last statutory definition, is limited in its application from its very context and the wording of the entire act, which relates only to the business or the trade of the employer.   It is argued that this is apparent when we observe that "factories," under § 7675, *supra*, "means an undertaking in which the *business* of working at commodities is carried on with power-driven machinery, and that 'workshop' means the place wherein power-driven machinery is employed and manual labor is exercised by way of trade."

Appellant then deduces the conclusion that the clear legislative declaration that "work" as applied to em-

ployers means *business or trade,* and that this construction is supported by the decision in *Guerrieri v. Industrial Insurance Commission,* 84 Wash. 266, 146 Pac. 608, where we held that the operation of a passenger or freight elevator is not an extrahazardous employment entitling the operator to compensation for injuries within the definition of the act; that § 7674, *supra,* includes factories, mills, workshops, elevators, etc., and indicates an intent to cover classes of business, rather than particular pieces of machinery. *Barney v. Anderson,* 116 Wash. 352, 199 Pac. 452, and *Remsnider v. Union Savings & Trust Co.,* 89 Wash. 87, 154 Pac. 135, Ann. Cas. 1917D 40, are cited as sustaining that construction.

Since the opinion by the *Attorney General* to the department of labor and industries dated July 17, 1923, the department has never classified delivery wagons and auto trucks used by stores as "transfer, drayage and hauling," nor their places of business as "warehouse and transfer" establishments. The department has, therefore, never collected premiums from such concerns. The legislature has twice met since that opinion of the *Attorney General,* and the adoption of that policy by the department, and no different classification has been enacted by the legislature.

The trial judge concurred in the contention of respondent, and decided the case upon the belief that every concern, which commonly uses a truck or vehicle for moving personalty, is engaged in the business of transfer, drayage and hauling. Respondent contends, therefore, that he was engaged in "truck driving" under § 7676, *supra;* that under § 7674 he was engaged in "transfer," defined in the dictionaries as a removal or conveyance of a thing from one place to another; and that he was engaged in "drayage" under the last section, for he was using a vehicle for carrying heavy

loads. It is also contended that he was engaged in "hauling" under § 7674, inasmuch as it was stipulated that the truck he was driving was such as is commonly used for heavy hauling.

Respondent then argues that the extrahazardous nature of the work in which he was engaged, when injured, is the criterion for interpretation, and not the main business of the employer, in determining his right to take under the workmen's compensation act.

Respondent then cites and quotes largely from several of our cases, which, it must be conceded, give some support to his contention.

In *Wendt v. Industrial Insurance Commission*, 80 Wash. 111, 141 Pac. 311, we held that, where carpenters were engaged to put up shelving, repair fixtures, etc., in a department store which used power-driven machinery for the repair of its trucks and various work required by the store, such department store was engaged in the extrahazardous business of conducting a workshop, as defined in the act. We held that such occupation fell within the letter, as well as the spirit, of the workmen's compensation act, and that the act, because of its humaneness and declarations of a new public policy, should be interpreted liberally and broadly in harmony with its purpose to protect injured workmen and their dependents, independent of any question of fault.

*Replogle v. Seattle School District No. 1*, 84 Wash. 581; 147 Pac. 196, relied upon, was a case where we held a workman employed by the school district as a storekeeper's helper, and injured while assisting an electrician temporarily, was under the act as a workman.

*State v. Business Property Security Co.*, 87 Wash. 627, 152 Pac. 334, was another case where a depart-

ment of the concern's business was clearly the repair of buildings, which was one of the occupations included in the act.

In *Gowey v. Seattle Lighting Co.*, 108 Wash. 478, 184 Pac. 339, we held that a girl who was injured in the office of a gas company, while operating a power-driven office machine, used for making stencils for addressing statements and bills to customers, was under the act as a workman in a workshop, as defined in the act.

*Rector v. Cherry Valley Timber Co.*, 115 Wash. 31, 196 Pac. 653, 13 A. L. R. 1247, held that a soldier assigned to work at logging was under the act, the court saying:

"It was the intention of the legislature to protect every one engaged in work in any of the extrahazardous industries of the state. . . . The act, as plainly as it is possible to express the idea, brings within its scope every worker in an industry which the act declares to be hazardous."

In *Amsbaugh v. Department of Labor and Industries*, 128 Wash. 692, 224 Pac. 18, we discussed the effect of the amendment of the original act (Laws of 1911, p. 356, § 4) as it now exists in § 7676, Rem. Comp. Stat. In that case we said:

"Therefrom it is contended on behalf of the appellant that the segregation by an employer of his workmen into extra-hazardous and non extra-hazardous classes was abolished and that all employees were brought within the operation of the act. To that contention we cannot agree. None except those engaged in extra-hazardous occupations are or were within the purview of the act, and the italicized language found in the original law neither added to nor took from it in any particular, and it was therefore quite proper to drop it in the recast of the section by the legislature in 1915."

As a matter of common knowledge, many concerns in the state are engaged in the regular business of transfer, drayage and hauling for the general public for hire. Those are manifestly the "classes of business" or "industries" which the legislature had in mind, in enacting the statutes before quoted. L. Marks & Company was not engaged in any business of transfer, drayage and hauling for hire, but was engaged only in hauling its own goods and chattels. Neither was it engaged in an industry, such as warehousing, an incidental part of which was transfer, drayage and hauling, or team and truck driving. The cases, cited and relied upon by respondent, do not announce rules contrary to this. As we said in *Parker v. Pantages Theater Co., supra:*

"  . . . if the legislature or the industrial insurance department had classified advertising sign washing as an extrahazardous occupation, although it may have been only a very infinitesimal part of the activities of the theater company, the respondent, injured in such work, would have been forced to look for his recompense to the state fund and could not have prosecuted this action; the test being whether the occupation has or has not been classified as extrahazardous in law, no matter what it may be in fact."

So, in this case: Had the legislature classified the driving of ordinary business delivery wagons or trucks, or transferring or hauling in the business of any merchandising concern, whether such business was extrahazardous or not, respondent would have come under the act.

Regardless of considerations of expediency and policy, until the legislature has explicitly brought such work under the workmen's compensation act, we shall not extend the rules, announced in the cases relied upon by respondent, to cover such activities as that

involved here as extrahazardous within the contempla-
tion of the act.

The judgment is, therefore, reversed.

MACKINTOSH, C. J., FULLERTON, MAIN, and ASKREN,
JJ., concur.