[No. 16463. Department One. July 8, 1921.]

# E. A. COFFIN, *Appellant*, v. JAMES E. BLACKWELL *et al.*, *Respondents.*[1]

MUNICIPAL CORPORATIONS (315)—POLICE POWER—RETROACTIVE ORDINANCES—PROTECTION AGAINST FIRE. A city, in the exercise of the police power, has a right to enact an ordinance, retroactive in effect, to compel a building owner to make necessary changes to reduce the fire hazard of a structure erected prior to the passage of the ordinance.

SAME (50)—ORDINANCES—CONSTRUCTION AND OPERATION. The building code of Seattle, providing, in § 1035 of the part relating wholly to "alterations and repairs" of existing buildings, that "nothing in this part shall be construed to prevent the superintendent of buildings from requiring unsafe or dangerous structures to be made safe under the powers granted elsewhere in this code," has a special and limited effect to the control only of alterations and repairs.

SAME (50). The building code of Seattle, § 103, providing that "nothing in the building code shall be construed as requiring that buildings heretofore constructed and equipped must be reconstructed, rearranged or otherwise equipped unless it be by ordinance specially provided," took from the administrative officers of the city all power to require reconstruction or equipment, unless specifically provided by ordinance to that effect.

SAME (50). Section 110 of the Seattle building code empowering the superintendent of buildings to require a building to be demolished or vacated when he finds "(c) That such building is unsafe to human life or property from any cause whatever or in imminent danger of so becoming," authorizes physical abatement by the officer when the danger is unmistakable and emergent.

SAME (50). Under § 9 of the "fire hazard" ordinance of the city of Seattle, providing that nothing therein shall be construed to require the alteration of elevators in any building constructed in full accordance with a permit issued by the superintendent of buildings, "unless such alterations or installation is manifestly necessary for the safeguarding of life and property or is specifically required by ordinance subsequently passed by the city council," the administrative officers of the city had no power, in the absence of a showing of immediate and unmistakable necessity, to require the reconstruction of an elevator shaft except under the sanction of a special ordinance passed for the express purpose of ordering the change.

[1]Reported in 199 Pac. 239.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered December 2, 1920, dismissing the action and dissolving a temporary restraining order prohibiting the enforcement of certain changes in a building to conform to the building code. Reversed.

*Carroll B. Graves,* for appellant.

*Walter F. Meier* and *Nelson T. Hartson,* for respondents.

HOLCOMB, J.—It is conceived that the subjoined statement (except as otherwise specifically noted) presents undisputed record facts.

This suit was waged to enjoin the superintendent of buildings, the fire marshal, and the chief of the fire department, officers of the city of Seattle, from closing a building, referred to in the complaint, in an effort to enforce compliance with a notice and directions that certain alterations and changes be made in that building. One Angie B. Collins, sometimes referred to as the John Collins Estate, was originally made a party defendant, but, prior to the trial, was dismissed from the action, and an amended complaint was filed. The cause was heard and determined upon the issues tendered by the amended complaint and the answer thereto.

The building under consideration is the Hotel Knickerbocker, in Seattle. This building was designed, constructed, and leased for hotel purposes, and, at all the times mentioned, was being occupied and operated as a hotel. It is seven stories in height, with six guest rooms on the ground floor, and fourteen rooms on each of the other floors, or ninety rooms in all. All floors are served by one elevator.

On June 22, 1920, this building was let and demised to appellant for a term of two years and five months,

commencing July 1, 1920. The appellant went into possession under this lease immediately, and ever since has remained in possession.

On about June 25, 1920, respondent officers served notice upon the owner of the building that certain changes and alterations must be made therein. The chief and radical alteration had relation to the enclosing of the elevator shaft and the notice required that alteration to be as follows:

"(4) The elevator must be enclosed in the basement with fire-proof construction and on the upper floors with partitions of four (4) inch solid wood, plastered both sides. All doors leading to the elevator shaft, must, of course, be fire-proof doors, in accordance with Section 663 of the building code."

The items 1, 5, 7, and 8 of the notice are not material, resistance thereto having been waived at the trial, and those changes either have been made or will be made in compliance with the instructions, but items 2, 3, 4, and 6, are within the objections urged by appellant.

On August 4, 1920, an additional notice was served by the respondent officers upon the Collins estate, and a copy thereof was transmitted to the plaintiff at the Knickerbocker hotel, wherein it was declared that if the alterations required by the notice of June 25, 1920, were not complied with, the building, or a portion thereof, would be closed. The effect of these two notices was to declare the intention of the officers, upon their own determination, unless such alterations were made, to prohibit the operation of the hotel, and thus interfere with and prohibit the carrying on of appellant's hotel business.

The Knickerbocker hotel was constructed in the year 1907, under a permit granted by the superintendent of buildings, dated January 8, 1907. The present ordin-

ance, and the ordinances under which the city officers were claiming the right to act, were enacted in the year 1913, and in subsequent years. There was no contention that the building was not constructed in compliance with the terms of the permit for its construction.

The hotel building, structurally, does not comply with the present ordinances, nor is it a fireproof or mill building within the meaning of the ordinances. The building is situated inside of the second building district of the city. In order to comply with the ordinance relating to buildings in the second building district, this structure must either be a fireproof building or a mill building. Building Code, § 210. Sections 217-226 define fireproof building construction, and §§ 236-247 define mill building construction. It is not claimed by the respondent officers that the construction, arrangement or equipment of the building is contrary to the provisions of the building code for the purpose for which the building was used or occupied, namely, for hotel purposes, but only that changes were required under the general provisions of the code relating to all classes of buildings in that building district.

The building code was adopted in 1913 and the codification in evidence contains all amendments to May 1, 1920. Section 103 of this code reads as follows:

"Nothing in the building code shall be construed as requiring that buildings heretofore constructed and equipped must be reconstructed, rearranged, altered or otherwise equipped unless it be by ordinance specifically so provided."

An ordinance approved September 28, 1920, amended § 103 to read as follows:

"Section 103. Nothing in the building code shall be construed as requiring that buildings heretofore constructed and equipped, must be reconstructed, rearranged, altered or otherwise equipped except as may

be required under authority of Section 110 of this code and other provisions of law relating thereto.''

Section 110 empowers the superintendent of buildings to direct and require a building to be vacated, removed or demolished by notifying, in writing, the owner, lessee, or person in charge, whenever he finds the following conditions to exist:

''(a)  That such building has been erected, altered or repaired subsequent to the passage of this ordinance in a manner contrary to the provisions thereof or the permit issued hereunder.

''(b)  That the construction, arrangement or equipment of such building or portion thereof, is contrary to the provisions of this Code for the purpose for which such building is used or occupied.

''(c)  That such building is unsafe to human life or to property *from any cause whatever* or in imminent danger of so becoming. (Italics ours.)

''(d)  That such building is not provided to the extent and in the manner required by ordinance with proper and sufficient means of egress in case of fire or of fire protective and fire extinguishing apparatus or of light and ventilation.''

Defendants introduced a third (called the ''fire hazard'') ordinance, numbered 36,299. The pertinent sections in that ordinance are §§ 8 and 9, which read as follows:

''Section 8.  The fire marshal is authorized and empowered, acting in conjunction with the superintendent of buildings, to direct and require that any building, or portion thereof, be reconstructed, rearranged, altered, repaired or provided with fire preventive or extinguishing equipment whenever he shall find that the means of egress from the same, or of preventing the origin or spread of fire, or of extinguishing fire, are insufficient, inadequate or do not comply with the provisions of the ordinances of the city relating thereto, and to direct and require that any building, or portion thereof, be vacated, removed, or demolished by posting

a notice on such building or structure, and notifying in writing the owner, lessee or person in charge whenever it be found by him that such building or portion thereof constitutes a fire hazard, which should be abated or is unlawfully or dangerously occupied or is not provided to the extent or in the manner required by ordinance, with proper and sufficient means of egress in case of fire or panic, or with fire protective and fire extinguishing construction, apparatus or equipment.

"Section 9. Nothing in this ordinance contained shall be construed to require the alteration, of the number, location or construction of exits, aisles, halls, passageways, stairways, elevators, or the installation of fire preventive or extinguishing equipment in or on any building constructed in full accordance with a permit issued by the superintendent of buildings; unless such alterations or installation is manifestly necessary for the safeguarding of life and property or is specifically required by ordinance, subsequently passed by the city council; or unless the use and occupancy of such building has been changed subsequent to the issuance of said permit in such a manner as to necessitate such alterations or installation."

This ordinance took effect August 30, 1916. Section 113 and § 1096 of the building code and § 45 of ordinance No. 36,299 provide penalties for violation of these ordinances upon conviction thereof.

A further enactment of the building code, which respondents cite as bearing upon this matter, is § 1035 of the building code contained in the chapter or "part" of that code relating wholly to "alterations and repairs" of existing buildings, which section reads:

"Nothing in this part shall be construed to prevent the superintendent of buildings from requiring unsafe or dangerous structures to be made safe under the powers granted elsewhere in this code."

Judgment was rendered dismissing the action, and dissolving the temporary injunction, from which plaintiff appeals, and assigns as errors:

(1) The court erred in holding that the defendant officers had the authority to require the alterations determined upon by them; (2) the court erred in holding that the defendant officers could execute their determination by threat and force instead of resorting to the procedure authorized by law and by ordinance; and (3) the court erred in dismissing the action, dissolving the injunction, and rendering judgment for the defendants.

In our view, § 1035, being contained in the chapter or "part" of the ordinance regulating and controlling alterations and repairs to existing buildings by the owners, of their own volition, manifestly has but a special and limited effect, having relation only to the control and regulation of alterations and repairs by the officers charged therewith, either during the progress of the alterations and repairs, or thereafter, and that the section has no general effect otherwise.

We are fully in accord with the proposition advanced by respondents, that the city, in the exercise of the police power, has a right to enact an ordinance retroactive in effect, to compel a building owner to make necessary changes to reduce the fire hazard of a structure erected prior to the passage of the ordinance. This proposition was fully sustained in *Seattle v. Hinckley*, 40 Wash. 468, 82 Pac. 747. It is clear also that the city asserted this power and right in the enactment of the several ordinances involved herein. Nor are the penalty provisions exclusive, for they are not adequate to enforce all needful regulations in such matters. The general building code, however, in itself, § 103, wherein it is provided that "nothing in the building code shall be construed to require that buildings heretofore constructed and equipped must be reconstructed, rearranged, altered or otherwise equipped, unless it be by

ordinance specifically so provided," while in force, assuredly took from any of the administrative officers of the city the power to require such reconstruction, rearrangement, alterations or equipment, unless specifically provided by ordinance to that effect, and there is no such ordinance enacted in regard to this property.

Nor is there any doubt that, under the provisions of § 110 of the building code heretofore quoted, the executive officers charged therewith would have a right to require that a building that is manifestly unsafe to human life or property, from any cause whatever, or in imminent danger of so becoming, be removed or destroyed. That condition occurs when the peril is imminent and manifest—that is, unmistakable—and such as to constitute at the time an emergent danger. In all such cases, a physical abatement by the executive officers would be sustained.

In this case it was shown that the building in question was built under a permit, and under regulations in force at the time of its erection. The changes required by the officers of the city would require the expenditure of approximately $3,000, and suspend the operation of the elevator for a considerable period, and put plaintiff's hotel business at a standstill, and drive much of its business away; and if the threat of the officers to close the building, or a part of it, should be effectuated, that would drive its business away.

The trial judge, in deciding the case, made the following observations:

"It is quite evident from the facts in the case that the alterations required by the city officers are reasonably necessary for that purpose. The present condition of the building is such as to be extremely hazardous for the guests in case of fire, to escape. The alterations as required greatly reduce the hazard and may be the means of preventing the loss of life in case of fire.

"If the rights of the city were limited to the building code, ordinance No. 31578, there would be no question but that the alteration required by the superintendent of buildings and the fire marshal, could not be enforced, unless a separate ordinance be passed specifically providing for it. However, the later ordinance, No. 36299, and particularly paragraphs 8 and 9 of said ordinance, seems to me to furnish ample authority to the fire marshal and the superintendent of buildings to require reasonable alterations for the purpose of preventing the origin and spread of fire. It is quite evident from the facts in the case that the repairs required by the city officers are reasonably necessary for that purpose. The present condition of the building is such as to be extremely hazardous for the guests in case of fire, to escape. The alterations as required greatly reduce this hazard, and may be the means of preventing the loss of life in case of fire. . . . . .

"In reaching my conclusions I am not overlooking the fact that the city at the trial conceded that the building in question when constructed, complied with all of the building ordinances of the city of Seattle, and that the plaintiff conceded at the trial that the building, as constructed, does not comply with the present building ordinances which have been enacted in the meantime."

The "fire hazard" ordinance, No. 36,299, as heretofore noted, took effect August 30, 1916. Section 103 of the building code ordinance, after the amendment on September 28, 1920, reads:

"Nothing in the building code shall be construed as requiring that buildings heretofore constructed and equipped, must be reconstructed, rearranged, altered or otherwise equipped except as may be required under authority of Section 110 of this code, and other provisions of the law relating thereto."

Section 110 only empowers the superintendent of buildings to direct and require a building to be vacated, removed or demolished by notifying in writing the

10—116 WASH.

owner, lessee, or person in charge, whenever he finds the conditions existing heretofore noted in subdivisions a, b, c, and d. And the other provisions of the law referred to in § 103, as amended, other than that of § 110, specifically referred to, and the penalty provisions, cannot refer in any way, by inference, intendment, or otherwise to any general city legislation other than §§ 8 and 9 of the "fire hazard" ordinance, No. 36,299. But § 9 of the "fire hazard" ordinance limits and restricts the application of that ordinance in the same way that § 103 of the building code before amendment did, unless "specifically required by ordinance," except where "manifestly necessary for the safeguarding of life and property."

The building code or other ordinances do not authorize the respondent officers, except in case of manifest necessity, to close or vacate a building or remove or demolish it, because of the failure or refusal of any person to comply with any notice or requirement by them, but provides only for a criminal prosecution in case of the violation of any ordinance provision. This, of course, is qualified by previous observations to the effect that in case of imminent peril, or emergent danger existing in a building erected under the former ordinances, or under any ordinance, it could be abated as a nuisance at any time without notice.

We are of the opinion, therefore, that the city could not proceed in regard to the building of appellant and require the building to be reconstructed, rearranged, repaired or equipped except by proceeding under the provisions of § 103 in the original building code, or § 9 of the fire hazard ordinance, by first enacting an ordinance specifically requiring such alterations and installations. There is no testimony in this case showing that any immediate public necessity requires the physical

abatement of this building or any part of it. The most the evidence shows is that the rearrangement of the building as indicated by the fire marshal, and the superintendent of buildings, would tend to lessen the danger from fire to inmates of the building, but in no sense is it shown to be imminently hazardous. Buildings in such condition are to be regarded as protected from mere executive interference by the building code, under § 103, and § 103 as amended, and § 9 of the fire hazard ordinance, "unless such alterations or installation are manifestly necessary for the safeguarding of life and property, or are specifically required by ordinance subsequently passed by the city council." As heretofore remarked, "manifestly necessary" means an immediate and unmistakable necessity.

For these reasons we conclude that the judgment of the trial court is erroneous, and it is reversed.

PARKER, C. J., BRIDGES, and MACKINTOSH, JJ., concur.