[No. 16824. Department Two. October 19, 1922.]

# Albert G. Edwards et al., Respondents, v. W. L Powell, Appellant.[1]

Fraud (13)—Exchange of Property (3)—Action for Damages—Rescission—Complaint—Sufficiency. An action by the purchaser of land in a trade, to recover damages in a specified sum for fraudulent representation of his vendors, is one for damages, rather than for rescission and the price paid; especially where it was tried on that theory and so treated in appellant's brief on appeal.

Same (22)—Evidence—Sufficiency. A verdict and recovery for fraud inducing a trade for lands is sustained by evidence of misrepresentations as to the character of the soil, the cost of an irrigation ditch and the value of the land, notwithstanding plaintiff's inspection of the land, where he walked with a crutch and was told that he could be taken over only a small part, he was ill and his eyesight and mental faculties were less keen than formerly.

Same (23)—Exchange of Property—Measure of Damages. The measure of damages for fraud in the trade of plaintiff's drug store for defendant's land is the difference between the value of the property transferred at the time of the sale and what its value would have been if as represented, even though the value of the drug store was not fixed.

Same (18)—Action for Damages—Evidence—Admissibility. In an action for damages in misrepresenting the value of lands traded by defendant for a drug store, the value of the drug store is immaterial, except to show that plaintiff parted with some value; and it is therefore not error to exclude it upon an issue as to the amount of the damages.

Same (26)—Action for Damages—Instructions. In an action for fraud in misrepresenting the value of land purchased, where there was evidence to sustain all the specifications of fraud, it is not error to say to the jury that, if they find that all of the representations, or either of them, were made, the plaintiff would be entitled to verdict.

New Trial (35)—Newly Discovered Evidence—Diligence. A motion for a new trial for newly discovered evidence is properly overruled where the new evidence was to meet testimony by deposition, taken and on file for two years previously, and the matters were of casual observation or remark some seven years before, and the deponent had since died.

Interest (7)—Demands not Liquidated. Interest is allowed on an unliquidated claim for damages for fraud from the date of the judgment only.

[1]Reported in 210 Pac. 7; 212 Pac. 163.

Appeal from a judgment of the superior court for Yakima county, Honorable Thomas E. Grady, judge *pro tempore,* entered May 25, 1921, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for damages for fraud. Affirmed.

*Henry H. Wende, Parker, LaBerge & Parker,* and *Chadwick, McMicken, Ramsey & Rupp,* for appellant.

*D. V. Morthland* and *E. C. Hodder,* for respondents.

MAIN, J.—This action was brought to recover damages as the result of fraud in a real estate transaction. The cause was tried to the court and a jury, and resulted in a verdict for the plaintiffs in the sum of $22,000. The defendant interposed a motion for judgment notwithstanding the verdict, and, in the alternative, for a new trial, both of which were overruled and a judgment entered upon the verdict, from which the defendant appeals.

On March 12, 1914, the respondents were husband and wife and were the owners of a drug store in the city of Omaha, Nebraska. The appellant, as the respondents contend, was the owner of 160 acres of unimproved land in Yakima county, this state, but, as the appellant contends, this property was owned by his brother, L. G. Powell. So far as the disposition of the case is concerned, it is not material which of these parties was the actual owner of the land. On the date mentioned, the respondents exchanged their drug store for the land and $1,000 in cash. Sometime after the transaction was closed, the respondents, believing that they had been defrauded through the misrepresentations of the appellant, W. L. Powell, brought this action to recover damages. Much of the testimony was taken by deposition, including that of the respondent Albert G. Edwards, who died after his deposition was taken

and prior to the trial of the action. Other facts will be mentioned in connection with the consideration of the particular point or points to which they may be germane.

The first question to be determined is the character of the action. The appellant in his reply brief vigorously contends that it is a suit to recover the price paid, and in effect is one for rescission. The complaint alleges that the land was purchased for the sum of $24,000, sets out in detail the fraudulent representations inducing the transaction and alleges that, by reason of such fraudulent representations, the respondents were damaged in the sum of $23,000, and prays judgment for that sum.

As we read the complaint, it is an action for damages and not for rescission. The fact that there may have been alleged greater damages than the respondents were entitled to does not make it an action for rescission. In addition to this, the case was tried upon the theory that it was an action for damages. In fact the appellant in his opening brief makes the statement: "The court must bear in mind that this suit was not brought for rescission, but is an action for damages." Since the action was one for damages as we view it, the argument and authorities of the appellant, so far as they proceed upon the hypothesis that the suit was one in effect for rescission, become immaterial and will be disregarded in the consideration of the case.

The next question is whether there was sufficient evidence of fraud to take the case to the jury. The complaint charged fraud in a number of particulars, as to the character of the land and its soil, its availability for the purpose of irrigation, the possibility of constructing an irrigation ditch at small cost, and the value of the land. The evidence upon the charges of

fraud was conflicting. There was abundant evidence, if believed by the jury, to sustain the verdict that the respondents had been defrauded. The appellant argues that, since Albert G. Edwards came to Yakima prior to the time the transaction was closed and was taken by the appellant out to see the land, he acted upon his own judgment, and therefore the charges of misrepresentation were not well founded. A line of cases to this effect is cited. The present case, however, does not fall within the rule.

At the time Edwards was taken to the land in an automobile by the appellant, he was shown three corners of it and walked across one end. He testified that he was not taken over the land because the appellant said that the ground was in such condition that he could not drive the car across. At this time Edwards was suffering from an advanced case of diabetes. The disease had progressed so far that one of his toes had been removed to arrest the progress of diabetic gangrene. He walked with a cane or crutch; his eyesight was impaired and his mental faculties less keen than formerly. The jury were justified in finding that Edwards relied, not upon his own investigation and judgment, but upon the representations made to him by the appellant. The evidence is extensively set out in the briefs and discussed, but since the case was one tried by the jury, our inquiry only goes to the extent of determining whether there was sufficient evidence to sustain the verdict. It does not, therefore, seem necessary to discuss the evidence in detail. As already stated, there was evidence in abundance to sustain the jury's verdict.

The next question is the measure of damages, the appellant contending that this is the difference, if any, between the value of the land and the value of the drug store; the respondents contending that the measure of

the damages is the difference between the value of the land at the time of the transaction and its value as then represented by the appellant. In this state the rule is well settled that, where property is sold and the purchaser subsequently brings an action charging fraudulent representations, the measure of damages is the difference between the actual value of the property transferred at the time of the sale and what its value would have been if it had been as represented. *West v. Carter,* 54 Wash. 236, 103 Pac. 21; *Walsh v. Meyer,* 40 Wash. 650, 82 Pac. 938; *Bunck v. McAulay,* 84 Wash. 473, 147 Pac. 33.

There are some states which have adopted the rule that the measure of damages is the difference between the price paid and the value of the property received, but the weight of authority is with the rule adopted by this court. In *Parkhurst v. Elliott,* 103 Wash. 89, 173 Pac. 731, the rule above stated was applied where there was an exchange of properties and not a cash sale. The appellant recognizes the rule where the sale is one for cash, or where there is an exchange of properties with a value fixed upon each property at the time, but contends that it should not be applied where the parties at the time of the transaction did not specify the value of the respective properties. In this case no value was placed upon the drug store by the parties. It was exchanged for the land, which the appellant at the time represented to be worth $150 per acre. We see no reason why the same rule should not be applied in a case of this kind the same as where there was a cash transaction, or the properties were exchanged with respective fixed values. The courts which have adopted the same rule that this court has make no difference in applying it whether there was a sale or an exchange. *Boyce v. Gingrich,* 154 Mo. 198,

134 S. W. 79; *Hecht v. Metzler,* 14 Utah 408, 48 Pac. 37, 60 Am. St. 906. In the case last cited it was said:

"The rule is well established that in an action for fraud and deceit in the sale or exchange of real estate the measure of damages is the difference between the actual value of the land as it would have been if as represented and as it actually was." (Citing many cases.)

There are cases which hold that, in an exchange of properties, the measure of damages is the difference between the values of the properties. These cases are from those jurisdictions which hold that the measure of damages in the case of a cash sale is the difference between the price paid and the value of the property received. As already stated, in the jurisdictions which have adopted the rule that the measure of damages is the difference between the value of the property received and what its value would have been if as represented, no distinction is made whether the transaction be for cash or whether it be one of exchange. In *Stoke v. Converse,* 153 Iowa 274, 133 N. W. 709, Ann. Cas. 1913E 270, 38 L. R. A. (N. S.) 465, it was said with reference to an exchange of properties where there had been a charge of fraud:

"It can make no difference whether the innocent party pay in money or in property. In either event he is entitled to the price he fixed and the other party undertook to pay, and ought not to be compelled to accept a lower price because of another's fraud, and thereby allow the wrongdoer a bargain he could not have obtained by fair dealing. Otherwise the wrongdoer may speculate on the outcome of his fraudulent enterprise without possibility of loss, for, under the rule as stated in the instruction quoted, in no event would he be liable for more than the value received by him. But if compelled to make good his representations, he is not paying the innocent party a speculative price, but that which he represented him to be getting,

and for which such innocent party parted with the consideration paid. We discover no reason to depart from the rule as laid down in *Likes v. Baer*, 8 Iowa 368, and followed since, i. e., that the measure of damages for deceit is the difference between the market value of the property as it really was at the time of the purchase and the market value thereof as it would have been if as represented."

The next question is whether the trial court erred in rejecting certain offers of evidence relative to the value of the drug store. The issue to be tried under the rule above stated was the difference between the value of the land as it was and the value which it would have had if it had been as represented. The value of the drug store became material only to the extent of showing that the respondents had parted with something of value for the land, as pointed out in *Jones v. Elliott*, 111 Wash. 138, 189 Pac. 1007, where it is said:

"Since the gravamen of the action is damages, it is manifest that there could be no recovery unless the respondent had suffered damages, and it is equally manifest that she could have suffered no damages unless she gave value for the note. Hence, on this branch of the case, it was competent, if not necessary, to show the value of the property the respondent parted with in the exchange, and hence proper to submit to the jury the question whether the property given in exchange had value. The court did no more than this, and we cannot conclude that it committed error in so doing."

There were a number of witnesses that testified as to the value of the drug store, after having been qualified to give such evidence. The evidence offered and rejected was a certificate as to the value of the drug store, made by Edwards in May, 1913, an inventory made in May, 1914, and an offer to show the price paid at the time the store had been sold on May 5, 1914. The first evidence offered was almost a year prior to the

time of the transaction, and the other was subsequent thereto. Even if this evidence had been admissible, a question which we do not now decide, its rejection was not error, since the purpose of showing the value of the drug store was only to show, as stated in *Jones v. Elliott, supra,* that the respondents had parted with something of value.

The next question is whether the court erred in submitting the case to the jury. The instruction complained of is as follows:

"In order to entitle the plaintiffs to a verdict in this cause, they must prove to your satisfaction by evidence, which to your mind is clear and convincing that the defendant at or prior to the execution of the deed to the land made either some or all of the following representations to the plaintiffs, or either of them.

"The land described in the complaint was good, deep, fertile, tillable soil, of a rich volcanic ash, capable of producing all kinds of grain, hay, alfalfa, fruits and vegetables.

"The land was practically level and could be readily irrigated from open ditches by gravity flow from the highest point on the land.

"That there was available for the purpose of irrigating all of the land an abundant supply of water in the Toppenish river at the lower end of the canyon on or near the southeast quarter of section 35, township 10, north, range 16, throughout each year.

"That an open ditch for the conveyance of irrigation water by gravity flow could be successfully constructed from an intake at the end of the canyon referred to herein at a point about two and one-half miles distance from the land to the point of highest elevation in it, at a cost not to exceed $300.00, and that the levels, soil and contour of the land were such that the construction and operation of the ditch would be entirely practicable.

"That the sum of $150.00 per acre was below the reasonable market value of the land.

"If you believe from the evidence that the defendant did make some or all of these representations to the plaintiffs, or either of them, at or prior to the sale of the land to them, that the plaintiffs believed them and relied upon them and were thereby induced to and did purchase the land, and that such representations were false and untrue, then you will find a verdict for the plaintiffs, and the fact, if it be a fact, that the defendant received no part of the purchase price for the land makes no difference."

In this instruction the jury were told that, if they found misrepresentations as to any or all of the things specified in the instruction, a verdict should be found for the plaintiffs. There was evidence to sustain all of the things specified, if believed by the jury. It was, therefore, not error to say in the instruction that, if the jury found that all of the representations, or either of them, were made, the plaintiffs would be entitled to a verdict.

The last question is whether the motion for new trial should have been granted on the ground of newly discovered evidence. After the trial, affidavits were made by a number of the citizens of Yakima stating that, when Edwards was there to look over the land, he had made independent inquiry with reference thereto. The affidavits also set out certain facts with reference to whether W. L. Powell was in Yakima at certain times prior to the transaction. These affidavits in part were to meet the testimony of Edwards which he had given by deposition. This deposition had been taken approximately two years prior to the trial and was on file and accessible to the appellant. In addition to this, the affidavits were made with reference to matters which were of casual observation or remark some seven years before. At the time, Edwards was dead and would not be in a position to refute the evidence if it

were offered. The trial court properly denied the motion for new trial on the ground of newly discovered evidence.

The judgment will be affirmed.

HOLCOMB, TOLMAN, and HOVEY, JJ., concur.

## ON PETITION FOR REHEARING.
[Department Two. January 16, 1923.]

PER CURIAM.—Since the opinion of the Department in this case, the plaintiffs called our attention to the fact that the matter of interest, which was presented upon their cross-appeal, was not passed upon. The appellant has also filed a petition for rehearing *En Banc.*

Upon the cross-appeal of the plaintiffs they claim that they are entitled to interest from the date of the transaction instead of from the date of the judgment, but this contention cannot be sustained in law. The action was one for damages for fraud and was, therefore, an unliquidated claim and one which required evidence to establish the amount thereof.

In *Wright v. Tacoma,* 87 Wash. 334, 151 Pac. 837, after stating the general rule that interest on unliquidated demands will not be allowed prior to judgment, and certain exceptions thereto, it was said:

"Where, however, the demand is for something which requires evidence to establish the quantity or amount of the thing furnished, or the value of the services rendered, interest will not be allowed prior to the judgment."

The cases of *Gray v. Reeves,* 69 Wash. 374, 125 Pac. 162, and *Eilers Music House v. Hopkins,* 73 Wash. 281, 131 Pac. 838, are each upon a state of facts materially different and are, therefore, not controlling.

In the defendant's petition for rehearing, the questions upon the merits of the appeal are comprehensive-

ly reargued.　After giving attentive consideration to all that has been there said, we think that the holding of the Department should be sustained.

The judgment will be affirmed upon both appeals.