[No. 25307. Department One. November 21, 1934.]

C. A. PERKINS et al., Appellants, v. JOHN L. MARSH et al., Respondents.[1]

*Hall & Schaefer*, for appellants.
*Sugg & Mason*, for respondents.

MILLARD, J.—This is an action for rent of a building upon a written lease made by plaintiffs to defendants.

[1]Reported in 37 P. (2d) 689.

The defense interposed was a constructive eviction by the lessors because of defects which were known to the lessors, of which they failed to inform the lessees prior to the lease, which the lessees did not know; and by reason of said defects the building was unfit for the purposes for which it was leased. By cross-complaint, defendants sought recovery for damages alleged to have been sustained by reason of the condition of the premises. The cause was tried to the court, which found that plaintiffs and defendants, respectively, were not entitled to recovery on the complaint and cross-complaint, but that defendants were entitled to their costs. From the judgment entered in conformity thereto, plaintiffs appealed.

Appellants have not brought a statement of facts or a bill of exceptions to this court. Therefore, the case is before us on the transcript, which includes the findings of fact, conclusions of law and the judgment.

It is the position of appellants that the findings of fact do not sustain the judgment; that the concealment of which respondents complain is not actionable, inasmuch as there is no implied covenant upon the part of the landlord that the demised premises are fit for the purposes for which they are rented, or for the particular use for which they are intended by the tenant. The facts as found by the court are summarized as follows:

On March 24, 1931, appellants leased, by written contract, to respondents, the basement and second floor of a building in Vancouver, at a monthly rental of one hundred and seventy dollars, for a period of three years from April 15, 1931. The premises were leased for the use of respondents as a retail automobile business, together with the repair and service shop, and the basement was to be used as a storage and salesroom for used automobiles. Appellants had conducted

a similar business in the same premises for a period of time prior to the leasing of same to respondents, and were familiar with the true conditions of the premises. Appellants knew that the upper floor was to be used as an exhibit and salesroom and for the office of respondents, and that it would be necessary that same be warm and dry.

The premises were never fit for the purposes for which they were leased, by reason of the fact that the basement was continually wet during the rainy season. At such times, the water would rise to a depth of two to three inches over the basement floor, the moisture penetrating to the upper floor and rendering the heating plant useless. Respondents were ignorant of the fact that, during the wet season, the premises became unfit for use. The premises were of no value to respondents during the winter season, or at any time except during the extremely dry months of summer and fall, hence it became impossible for respondents to continue to occupy the premises and conduct their business therein. They vacated the premises May 15, 1932.

"This vacation of these premises was excusable, and the defendants could have moved out at any time, and could not have been compelled to drain the building or try to keep it warm."

It is true that, in the absence of a duty to speak, silence as to a material fact does not of itself constitute fraud. *Farmers State Bank of Newport v. Lamon,* 132 Wash. 369, 231 Pac. 952, 42 A. L. R. 1072. However, the concealment by one party to a transaction of a material fact within his own knowledge, which it is his duty to disclose, is actual fraud. If appellants intentionally concealed some fact known to them which it was material for respondents to know, that constituted a fraudulent concealment; that is, the conceal-

ment of a fact which one is bound to disclose is the equivalent of an indirect representation that such fact does not exist, and differs from a direct false statement only in the mode by which it is made.

The general rule is, as contended by appellants, that there is no implied covenant upon the part of the landlord that the demised premises are fit for the particular use for which they are intended by the tenant, or that they shall continue fit for the purpose for which they were demised. 36 C. J. 45. There is an exception to the rule. Where there are concealed defects in demised premises, dangerous to the property, health or life of the tenant, which defects are known to the landlord when the lease is made, but unknown to the tenant, and which a careful examination on his part would not disclose, it is the landlord's duty to disclose them to the tenant before leasing, and his failure to do so amounts to a fraud.

"In the absence of fraud or concealment by the lessor of the condition of the property at the date of the lease, there is no implied warranty that the premises are tenantable or even reasonably suitable for occupation, and the rule of *caveat emptor* applies; so there is no implied warranty that the premises are safe or that their physical condition shall remain unchanged during the term of the lease. The exclusion of an implied covenant as to the condition of the premises is especially applicable when the lessee inspects them before executing the lease, or where the true condition of the rented premises can be readily observed.

"CONCEALMENT. Where the lessor conceals defects in the premises which the lessee could not have discovered by reasonable diligence it constitutes fraud; and where the lessee is compelled to remove from the premises by reason of such defects, he can recover from the lessor the rent paid in advance and the loss occasioned by such removal." 36 C. J. § 659.

An apposite authority is *Scudder v. Marsh,* 224 Ill. App. 355. The prospective tenant in that case exam-

ined the dwelling in question before leasing it. He saw the furnace in warm weather, without a fire. So far as could be told by looking, it was apparently of the kind and of sufficient size to properly heat the house. The landlord knew, from complaints by other occupants, of its insufficiency. He concealed that fact, and entered into the lease. The insufficiency of the furnace could be determined only by investigation by an expert and by actual experience in cold weather. When the weather became cold, the furnace failed to heat the house, and the tenant's children became ill. The court held that the circumstances amounted to constructive eviction by the landlord, and justified the tenant's removal from the premises and his discharge from any obligation to pay rent after his vacation of the premises. The court said:

"We have then the case of a prospective tenant examining a dwelling with a view of renting, who sees the furnace in warm weather without any fire, and so far as one can tell by looking, it appeared to be of the kind and of sufficient size properly to heat the house. The landlord, however, knows from complaints from former occupants that it is not sufficient for this purpose, but he conceals this fact and enters into a lease with the lessee. The insufficiency of the furnace cannot be determined by merely looking at it, especially by one not expert in the matter of furnaces, and its inadequacy in heating capacity can only be determined by an investigation by an expert and by an actual experience with it in cold weather. Do such circumstances amount to a constructive eviction by the landlord justifying the removal from the premises of the tenant and his discharge from any obligation to pay rent thereafter?

"Plaintiff invokes the general rule of *caveat emptor* which throws upon the lessee the responsibility of examining as to the existence of defects and providing against their consequences. Experience, however, has shown that under circumstances like these under consideration, the strict application of this rule tends to

work an injustice upon the tenant. From the very nature of the case, it would be almost impossible for a tenant by merely looking at a furnace in the summer time to have any informed judgment or opinion as to its heating sufficiency.

"The case calls for the application of another rule which is abundantly supported by precedent. This is that where there are concealed defects in demised premises which a careful examination would not disclose to the tenant, but which are known to the landlord, the latter is under obligation to reveal them to the tenant before leasing, and that failure so to do amounts to a fraud upon the tenant, and if, by reason of such defect, the tenant is compelled to vacate the premises, he will be relieved from liability for rent thereafter. This rule has been stated and supported in *Borggard v. Gale,* 205 Ill. 511, 514; *Sunasack v. Morey,* 196 Ill. 569; *Lazarus & Cohen v. Parmly,* 113 Ill. App. 624; *Lovas v. Independent Breweries Co.,* 199 Ill. App. 60, 62; *Long v. Joseph Schlitz Brewing Co.,* 214 Ill. App. 517, 520. There are also cases in other states to the same effect. In Woods' Landlord and Tenant, 805, it is said that if the landlord fraudulently conceals the facts about a building which might render it unfit for habitation, this is equivalent to an eviction."

In part, at least, the facts in the case at bar are very similar to the facts in the case cited. The failure of the drainage system to carry away the water in the rainy season, a fact which was known to appellants and of which respondents could not be aware until the rainy season, rendered impossible the heating of the building. The defects of which respondents complain were unknown to and unappreciated by them, and a careful examination on their part would not have disclosed same. It was the duty of appellants to disclose those defects, so that respondents could either decline the premises or guard against the defects.

The facts found by the trial court clearly present a

case of fraudulent concealment, and the judgment of the trial court should be, and it is, affirmed.

BEALS, C. J., MAIN, TOLMAN, and MITCHELL, JJ., concur.