[No. 31635.   Department One.   August 2, 1951.]

GEORGE CLOAKEY, *Respondent,* v. LAWRENCE J. BOUSLOG
*et al., Appellants.*[1]

*Robert E. Cooper* and *Carl C. Conrad,* for appellants.

*Ward & Barclay,* for respondent.

[1]Reported in 234 P. (2d) 880.

HILL, J.—This is an action for damages based on alleged fraud and deceit in the sale of an undivided one-half interest in a dairy herd. From a judgment in favor of the plaintiff, this appeal is taken.

It is uncontroverted that the appellants, Lawrence J. and Ethel Bouslog, husband and wife, sold a one-half interest in a herd of dairy cattle which was under quarantine for Bang's disease, to the respondent, George Cloakey, and that they leased a 100-acre farm to him for three years, the monthly rental to be one half the amount received from the sale of milk from the dairy herd.

Likewise, it is uncontroverted that the herd was moved to the leased farm and there cared for and milked by the respondent, and that Bang's disease spread through the herd to the extent that eighteen of the cows were found to be infected and that all were ultimately sold as beef cattle.

As in most fraud cases, there is sharp conflict in the testimony as to what representations were made. With notably few exceptions, we affirm trial courts on the issue of whether fraud has been established, because the question is determined on the basis of which witnesses the trial court believes. Appellants both testified that they told the respondent that the herd had been quarantined, which testimony the trial court did not believe. Recognizing that we will accept the trial court's findings on disputed facts, appellants take the position that, assuming for the purposes of this appeal that they did make the representation that the cattle were free from Bang's disease, such representation was no more than "a statement of opinion rather than a statement of fact, considering the surrounding circumstances and experience of the buyer." Appellants' argument seems to be that an experienced dairy farmer ought to know that any such statement is no more than an expression of opinion unless all of the cattle have been tested within the preceding thirty days, and that the burden is on the prospective purchaser to inquire as to whether a test has been made within that period of time.

There is nothing in this record to suggest that the disease is so prevalent that a statement that a herd is free

from Bang's disease must be regarded by an experienced dairy farmer as an expression of opinion and not as a statement of fact. Nor do we find anything supporting such a theory in the available literature on the subject, including the records, statistical and otherwise, of the division of dairy and livestock of the state department of agriculture.

We do not doubt that a statement that a herd is free from Bang's disease, though false, might be made in good faith (of course, if the statement constitutes a warranty, the question of good faith would be immaterial); but here the appellants had every reason to suspect, if not to know, that the herd was infected. It was under quarantine, and six reactors and one suspect had been permitted to remain in the herd after the last test prior to the sale to respondent, although there was evidence that the reactors and the suspect were disposed of prior to the sale. (For an explanation of "reactors" and "suspects," and a somewhat detailed exposition concerning Bang's disease and undulant fever, see the scholarly and informative opinion of Judge Steinert in *Nelson v. West Coast Dairy Co.*, 5 Wn. (2d) 284, 105 P. (2d) 76, 130 A. L. R. 606.) We are convinced that the trial court was correct in holding that appellants' statement that the herd was free from Bang's disease was a fraudulent misrepresentation, and that the respondent justifiably relied thereon.

Respondent also claimed that appellants had made the representation to him that all the cows in the herd were with calf and would freshen in due course. As to this representation, appellants make the same contention, *i.e.*, if made, it was merely an expression of opinion.

The respondent knew that the appellants had no dates or data covering the breeding of the cows, and knew that they were pasture-bred. A discussion as to whether the statement that the cows were all with calf was merely an expression of opinion and not a misrepresentation of a material fact, as urged by appellants, or whether it was a misrepresentation of a material fact on which the respondent, under the circumstances as known to him, had no right

to rely, which seems to us to be the situation, would be academic. We are convinced that, if this had been the only or principal statement on which respondent predicated his cause of action, no actionable fraud would have been established. However, our conclusion on this issue, while favorable to the appellants, cannot affect the judgment, as an examination of the findings discloses that, although the trial court found that a representation that the cows were all with calf was made and had been relied upon, all of the findings of damages were based on the fact that the herd had Bang's disease.

Appellants insist that the trial court erred in awarding the respondent damages for the loss of milk production attributable to Bang's disease, in addition to the difference between the value of the herd for dairy purposes and its value as beef, and that the additional award for the loss of milk production permits the recovery of double damages.

The trial court made a finding that the respondent was induced to take care of the diseased herd by the false and fraudulent representations by appellants heretofore referred to, and that he properly cared for and milked the cows from October 6, 1948, to December 8, 1949, when the cattle were sold for beef by mutual agreement of the parties. The trial court further found that if the herd had been "free from Bang's disease and free from the impairment in milk productivity resulting therefrom," the respondent would have received an additional $3,158 from the sale of milk.

We are unable to follow appellants' argument that to compensate the respondent for the loss he sustained from the diminished milk production during the fourteen months he and his wife cared for and milked the herd would constitute double damages. See *Suryan v. Lake Washington Shipyards,* 163 Wash. 164, 300 Pac. 941; *Schrank v. Philibeck,* 251 Wis. 546, 30 N. W. (2d) 233. Nor does our case of *Covey v. Western Tank Lines,* 36 Wn. (2d) 381, 218 P. (2d) 322, support appellants' position. Covey's loss was immediate; his five male mink were dead or gone and could have been replaced at once; his damage was their market value.

The fact that he did not choose to replace them with male mink of like quality was no fault of Western Tank Lines, Inc.

If respondent had owned the herd instead of only a one-half interest in it, it could be argued that he should have minimized his loss by selling the herd for beef as soon as he discovered that it was infected with Bang's disease, and thus have stopped the unprofitable, or at least less profitable, operation as a dairy herd. However, appellants owned a one-half interest in the herd, and respondent could not slaughter or sell for slaughter his one-half interest in each cow. The evidence shows that, as soon as appellants agreed to sell for slaughter, that was done.

Appellants' argument that respondent's undulant fever, caused by the handling of the diseased dairy herd, was not such a consequential result as could be reasonably foreseen and anticipated from the handling of cattle infected with Bang's disease, is likewise without merit.

Liability in such cases for spreading the disease to other animals is generally recognized. *Glaspey v. Wool Growers Service Corp.,* 151 Wash. 683, 277 Pac. 70; *Letres v. Washington Co-op. Chick Ass'n,* 8 Wn. (2d) 64, 111 P. (2d) 594; *Skinn v. Reutter,* 135 Mich. 57, 97 N. W. 152, 63 L. R. A. 743. And that is true irrespective of whether the action is on contract for a breach of warranty or in tort for fraud and deceit. *Joy v. Bitzer,* 77 Iowa 73, 41 N. W. 575, 3 L. R. A. 184; *Tallent v. Fox,* 24 Tenn. App. 96, 141 S. W. (2d) 485, 499; *Dushane v. Benedict,* 120 U. S. 630, 30 L. Ed. 810, 811, 7 S. Ct. 696. See annotation, 51 A. L. R. 498, "Extent of liability of seller of live stock infected with communicable disease."

This is the first time, so far as we have been able to discover, that damages for undulant fever contracted as a result of handling cattle infected with Bang's disease have been allowed in consequence of a fraudulent misrepresentation that a dairy herd was free from that disease. However, that undulant fever may be contracted by human beings through contact with animals infected with Bang's disease,

or with the carcasses of animals so infected, was recognized in *Nelson v. West Coast Dairy Co., supra.* (It was there said that the disease is most prevalent among farm workers and slaughterhouse workers; the evidence here is to the same effect, except that it appears that the highest incidence of the disease is among veterinarians.) In the frequently cited case of *State, Use of Hartlove v. M. Fox & Son,* 79 Md. 514, 29 Atl. 601, 24 L. R. A. 679, 47 Am. St. 424, where only the pleadings were before the court, it was recognized that a vendor of a horse who fraudulently concealed from the purchaser that the animal was afflicted with glanders, would be liable in damages for the death of an agent of the purchaser who contracted the disease while caring for the horse, if such death was the natural and probable consequence of contact with the diseased horse.

In this case the testimony supports the finding of the trial court that the respondent contracted undulant fever as a result of caring for the animals infected with Bang's disease, which had been sold to him on the fraudulent misrepresentation that they were free from that disease. This was a consequence well within what we called, in *Eckerson v. Ford's Prairie School Dist. No. 11,* 3 Wn. (2d) 475, 101 P. (2d) 345, "the ambit of reasonable expectancy."

Finding no prejudicial error, we affirm the judgment of the trial court in all respects.

SCHWELLENBACH, C. J., BEALS, DONWORTH, and FINLEY, JJ., concur.