[No. 32102. *En Banc.* November 16, 1953.]

HARRY BUTTNICK *et al., Appellants,* v. ETHEL M. CLOTHIER *et al., Respondents.*[1]

[1]Reported in 263 P. (2d) 266.

*Robbins & Robbins* and *Ralph E. Franklin,* for appellants.

*Joseph Matsen, Howard A. Adams, Clyde R. Cory, Jr.,* and *Albert M. Franco,* for respondents.

DONWORTH, J.—This action was instituted by plaintiffs as owners and lessors of certain real property to recover unpaid rentals under a written lease. Martha Remmen, the original lessee, and Ethel Clothier, the assignee of the lease, were joined as parties defendant. Defendants filed separate answers to the complaint. Defendant Remmen set forth certain affirmative defenses, cross-complained for relief against plaintiffs, and prayed, in the event that judgment be entered against her, for judgment over against defendant Clothier for such sum as she might be required to pay. Defendant Clothier, by way of affirmative defense and cross-complaint, pleaded two counterclaims, one for damages for deceit practiced by plaintiffs and the other for damages based upon breach of the lease on their part.

The trial was held to the court sitting without a jury. At the conclusion of the case, the court made findings of fact, conclusions of law, and entered a judgment which dismissed plaintiffs' action, awarded defendant Clothier damages on her first affirmative defense and cross-complaint, and denied further relief to either defendant except costs of suit. Plaintiffs' alternative motions for judgment notwithstanding the decision and for new trial were denied. Plaintiffs appeal from the judgment.

The Maynard building, consisting of five stories and a basement, was built in 1892 for use as an office building. It is located at 121-123 First avenue south in Seattle's skid-road district. In 1927, it was classified by the building department as an office building. That classification has never been changed. Over the years since its erection, the character of the neighborhood has deteriorated so that there is little or no demand for office space there.

Appellants purchased the building in 1936 and have con-

tinuously leased the building for offices, light manufacturing, storage, assembly halls, and general commercial uses. Under the building code of the city of Seattle (ordinance No. 72200, as amended), an "office building" is defined as:

"A building that is used or occupied predominantly for offices but may contain a limited amount of shops for supplying food, drink or other bodily comfort or needs, and *below the third story* may be used or occupied for commercial purposes not prohibited by this Code." (Italics ours.)

In September, 1947, Martha Remmen's lease on the Yesler hotel was about to terminate, and she needed a place to store all her hotel furnishings. She consulted appellant Harry Buttnick as to the possibility of leasing the Maynard building for that purpose. He informed her that the building was for rent and directed her to consult his real-estate agent. On September 26, 1947, a lease entitling her to the use and possession of the Maynard building (exclusive of the basement) subject to existing tenancies was executed. Copies of the existing month-to-month tenancy agreements were supplied to her.

The lease was for a two-year term commencing October 1, 1947, at a monthly rental of five hundred dollars, and included an option provision by which the lessee could elect to extend the term of the lease for an additional five years. Assignments or subleases of any portion of the premises without written consent of the lessors were prohibited. Under the heading "BUSINESS PURPOSE," it was provided that the premises were to be used for the purpose of conducting therein any lawful business or subletting any portion thereof for any lawful purpose.

Martha Remmen took possession of the premises and stored her hotel furniture on the second, third, and fourth floors. She sublet various other portions of the building for purposes identical to those previously existing. One of her tenants was Ethel Clothier, who leased part of the first floor on a month-to-month tenancy, where she conducted a dairy supply business of which she was sole proprietor. In January, 1948, Martha Remmen indicated to Ethel Clothier that she was interested in disposing of her interest

in the leasehold and was in touch with some interested parties. Ethel Clothier was afraid that if some one else took over the lease she might be required to pay a higher rental than the $125 per month which she was paying, or move her business from the building. Primarily to forestall these possibilities, she agreed with Mrs. Remmen to purchase her interest in the lease. An assignment (subject to all existing tenancies) was executed on February 18, 1948. Ethel Clothier, as assignee, agreed to make all payments required under the lease and to perform all covenants, conditions, terms, stipulations, and agreements contained therein. In consideration of appellants' consent to the assignment, Mrs. Remmen guaranteed performance by the assignee of the terms of the lease.

Appellants also, as a condition precedent to their consenting to this assignment of the leasehold interest, required that Ethel Clothier elect to exercise the option to extend the term of the lease for the period of five years from October 1, 1949. The extension agreement extending the term of the lease to September 30, 1954, was executed on February 28, 1948, and was signed by appellants and by both Martha Remmen and Ethel Clothier.

Up to the time of the execution of the extension agreement, neither Martha Remmen nor Ethel Clothier knew that the Maynard building had been classified as an office building in 1927. Appellants were aware of the classification and had previously been notified by city officials that certain structural alterations and changes would be required if the building was used for other than office purposes. Ethel Clothier was first notified of this condition on April 29, 1948, when appellants forwarded to her a copy of a letter sent to their agent by the chief of the fire department. It was dated March 24, 1948, and required fourteen specific alterations if the building was to be used for other than office purposes above the second floor. The cost of doing all that the city considered necessary to comply with the building code was very substantial, and Ethel Clothier informed appellants that she considered it their duty under the terms of the lease to make these alterations. Appellants

and Ethel Clothier thereupon commenced negotiations with a view of adjusting their differences.

In April, 1949, the building was damaged by an earthquake. Appellants caused repairs to be made to the building, but Ethel Clothier was dissatisfied with the amount of work done.

Ethel Clothier paid the monthly rental of five hundred dollars in accordance with the lease until November 1, 1949, when she failed to make the rental payment which then became due. This default was subsequent to the expiration of the original two-year term. On December 8, 1949, she notified appellants by letter that, by reason of their misrepresentations concerning the purpose for which the premises could be used, their failure to comply with the requirements of the city building department and the city fire department, and their failure to adequately repair the earthquake damage, they had breached the lease, and she would pay only such rental as was reasonable for the tenantable portion of the building. Pending further negotiations, the parties temporarily agreed on a rental of $385 a month, with the understanding that the payment and acceptance of this rental would be without prejudice to the rights of either party.

In July, 1950, a gas main in the street exploded and damaged the building. Appellants again caused repairs to be made, but Ethel Clothier again was not satisfied with them. The trial court found that appellants had adequately repaired the earthquake and explosion damage and no cross-appeal has been taken by either respondent.

The parties were unable to compose their differences concerning the alterations required by the fire chief and this action was instituted in October, 1950.

Thereafter on January 5, 1951, the fire department of the city of Seattle posted a notice on the building which stated that it was unlawful to occupy the premises for any purpose except as an office building. This notice consisted of a printed cardboard form approximately eleven by eight inches. The following is a copy of the notice with inserted material in italics:

"CITY OF SEATTLE

Fire Department

N O T I C E !

Is hereby given that it is unlawful to occupy *except as an office building any portion* of this building, located at [Number] *119-1st South* on Lot 5 of Block 1, Addition *Maynard,* until this notice has been removed by a representative of the Fire Department and until written authority to occupy [said] the building has been given the owner or lessee by the *Chief of the Fire Department.*

> "(Signed)   *Wm. Fitzgerald*
> *Chief of Fire Department*
> By   *Howard S. McGee*
> *Fire Inspector*

"Date of Posting  *5 January 1951*

"WARNING—The removal, mutilation, destruction or concealment of this notice is a misdemeanor punishable by fine and imprisonment.

"Every day that any person shall continue to occupy premises after the issuance and posting of a notice by the *Chief of Fire Department* directing their vacation shall be deemed a separate offense committed by the owner or his agent."

Appellants' brief contains nineteen assignments of error, in which they contend that the trial court erred in admitting certain evidence, in overruling appellants' motions challenging the sufficiency of respondents' evidence, in making and entering certain findings of fact and conclusions of law, in entering judgment in favor of respondents, and in denying appellants' alternative motions for judgment notwithstanding the decision and for new trial.

In order to render a decision in this case, it is necessary to discuss only a few of these assignments. In their first major argument, appellants contend that fraud was not an issue in this case because respondent Remmen neither pleaded nor claimed it, and, although respondent Clothier alleged fraud in her first affirmative defense and cross-complaint, she waived it early in the trial when she elected to affirm the lease and sue for damages.

The record discloses a long and somewhat confusing

colloquy between the court and counsel with regard to the exact extent of respondent Clothier's election, but we believe that, by electing to affirm the lease and sue for damages, she waived only her right to sue for rescission of the lease.

■■ This court has previously held that, after the discovery of fraud, a lessee may elect to affirm the lease, thereby waiving his right to rescission, and still maintain an action for damages based on deceit. *Salter v. Heiser,* 39 Wn. (2d) 826, 239 P. (2d) 327, and cases cited. Affirmance of a contract is not a waiver of the fraud and does not bar the right to recover such damages, but merely bars a subsequent rescission. *Gregg v. Beezer,* 142 Wash. 142, 252 Pac. 692; 17 C. J. S. 523, Contracts, § 167.

As we said in the case of *Pronger v. Old Nat. Bank,* 20 Wash. 618, 56 Pac. 391:

"The action for damages is a law action for a money judgment, requires no tender, and may be brought by the injured party at any time within the statute of limitations. Nor does an affirmance of the contract after discovery of the fraud extinguish the right to an action for damages on account of the fraud. An affirmance bars only the right to rescind. All other remedies remain unimpaired. [Citing cases.]"

The question of appellants' alleged fraud was therefore an important issue in this case. However, it is not necessary to discuss again all the elements which must be established to prove such a cause of action, because in this case respondent Clothier failed to prove one essential element, to wit, her consequent damage.

■ In an action for damages based upon fraud, the injured party is entitled to recover damages for losses proximately caused by the fraudulent conduct. *Lawson v. Vernon,* 38 Wash. 422, 80 Pac. 559; *Eyers v. Burbank Co.,* 97 Wash. 220, 166 Pac. 656; *Voellmeck v. Harding,* 166 Wash. 93, 6 P. (2d) 373, 84 A. L. R. 608; *Cloakey v. Bouslog,* 39 Wn. (2d) 66, 234 P. (2d) 880; *Salter v. Heiser, supra.* However, fraud without damage or injury is not remedial. *Miller v. Williamson,* 128 Wash. 124, 222 Pac. 201; *Godefroy*

*v. Reilly,* 140 Wash. 650, 250 Pac. 59; *Kahl v. Ablan,* 160 Wash. 201, 294 Pac. 1010; *Salter v. Heiser,* 36 Wn. (2d) 536, 219 P. (2d) 574.

The burden of proving damages as a proximate result of appellants' alleged failure to disclose that they had been notified by city officials (prior to the execution of the original lease) that the building could be used only for office purposes, and that substantial alterations would be required if it was to be used for other purposes, was on Ethel Clothier. The assertion by the fire chief in his letter dated March 24, 1948, that certain alterations would be required, set no time limit and threatened no abatement. It did not, in the absence of some further legal action on the part of the city, constitute an eviction of respondent or restrict her use of the premises.

Subsequently, on January 5, 1951, the fire chief caused the notice previously mentioned to be posted on the building, purporting to restrict its use to office purposes. The final determination of the validity and legal effect of such action is a question to be determined by the courts after the presentation of appropriate evidence in a proper proceeding, because mere executive interference is not decisive of the rights of the parties. See *Coffin v. Blackwell,* 116 Wash. 281, 199 Pac. 239.

Regardless of the legal effect of the fire chief's letter and his subsequent posting of the building, the evidence presented in this case is insufficient to prove damage. There is no showing here that, as the result thereof, Ethel Clothier's use of the building was actually confined to office uses or restricted in any way. She took possession of the building about March 1, 1948, subject to all existing tenancies (all of which were on a month-to-month basis). The evidence is not disputed that the existing tenants were using the premises for various commercial, manufacturing, assembly hall, and storage purposes. Following the receipt of the letter from the fire chief in April, 1948, these tenants were not disturbed in the use of their premises, and Ethel Clothier continued in possession of the entire building and conducted her dairy supply business on the first floor. Her

own testimony discloses that she secured additional tenants, including two printing businesses, two photographers, a liquor manufacturer, a lithograph company, and a manufacturer of electric outlets. Some of these businesses occupied space above the second floor and were not confined to office uses.

After the posting of the notice by the fire chief on January 5, 1951, respondent Clothier continued to use the building as she desired up to the time of the trial in November of that year. She made no substantial alterations at any time, terminated no tenancies but instead remained in possession and collected full rentals from all of her tenants during the entire three and one-half year period preceding the trial.

In support of respondent Clothier's contention that there was evidence that she suffered damage as a proximate result of appellants' alleged fraud, our attention is called to an answer, in the course of her testimony, wherein she described her efforts to rent certain vacant spaces following the earthquake damage, and volunteered: "But, due to this posting of the notice, since January 5, 1951, I have not been able to offer them to anyone."

This indicated only that, after the posting of the notice, she voluntarily abandoned any attempt to rent the vacant premises and did not establish that her use of the building was legally restricted in any way or that she was prevented from obtaining commercial tenants as a direct result of the posted notice.

The trial court erred, therefore, in overruling appellants' motion challenging the sufficiency of the evidence to sustain Ethel Clothier's first affirmative defense and cross-complaint and in awarding her judgment for the amount of rental paid by her in excess of three hundred dollars per month since March 1, 1948.

Appellants consented to the assignment of the lease on the condition that respondent Remmen remain as a surety for the performance of the lease and in consideration of her consent to the extension of the lease. Since the extension between appellants and respondent Clothier was made with

her knowledge and consent, she was not discharged from all liability.

The judgment is reversed, with instructions to dismiss Ethel Clothier's cross-complaint and to enter judgment in favor of appellants and against each respondent for $4,428.24 (being the unpaid balance of rental accruing under the lease from March 1, 1948, to November 1, 1951), together with interest thereon at the legal rate from November 1, 1951, until paid and for attorneys' fees, as provided for in the lease, in the sum of one thousand dollars.

It was not necessary for the trial court to determine the liability as between respondents when he dismissed appellants' action.

In light of our decision to reverse that judgment, the trial court is directed to enter judgment in favor of respondent Remmen against respondent Clothier for the full amount of the judgment recovered by appellants against respondent Remmen.

The new judgment shall provide that it is entered without prejudice to any cause of action which any of the parties hereto may hereafter assert against any other party concerning matters occurring or arising subsequent to November 1, 1951, in connection with the lease involved in this case.

MALLERY, SCHWELLENBACH, HILL, HAMLEY, FINLEY, WEAVER, and OLSON, JJ., concur.

GRADY, C. J. (dissenting)—The majority opinion does not reverse that part of the decree adjudging that appellants were guilty of fraudulent conduct in the procurement of the lease. The decision is based upon the theory that Clothier submitted no evidence from which it could be concluded that she sustained any damage by reason of any fraud by which she was induced to make the lease. I am not in accord with such decision.

I think the statement of the case in the majority opinion supports the findings of fact made by the trial court, and makes necessary the conclusion that Clothier was entitled to recover upon her counterclaim. The fraud practiced

was by a nondisclosure of the fact that the building leased had a restricted use unknown to Clothier and which it was the duty of respondents or their agents to disclose to her.

Nondisclosure of material facts which a party is bound in good faith to disclose is a deceitful practice and equivalent to a false representation. *Perkins v. Marsh,* 179 Wash. 362, 37 P. (2d) 689; *Oates v. Taylor,* 31 Wn. (2d) 898, 199 P. (2d) 924, and Vol. III, Restatement of the Law of Torts, 117, § 551.

A defrauded lessee may perform the contract and maintain an action for the damages sustained by reason of a deception, or if sued for unpaid rent may claim damages by way of recoupment. *Salter v. Heiser,* 39 Wn. (2d) 826, 239 P. (2d) 327, and cases and texts cited; *Nelson Co. v. Goodrich,* 159 Wash. 189, 292 Pac. 406; 32 Am. Jur. 444, Landlord and Tenant, § 536. The general damages are measured by the "benefit of bargain" rule, which as expressed in the case of vendor and purchaser is the difference between the value of the property at the time of the sale and what its value would have been if as represented, and in the case of landlord and tenant, the difference between its rental value at the time of leasing and the rent reserved. *Edwards v. Powell,* 121 Wash. 598, 210 Pac. 7, 212 Pac. 163; *Grosgebauer v. Schneider,* 177 Wash. 43, 31 P. (2d) 90; *Sherrin v. Gevurtz,* 142 Wash. 128, 252 Pac. 683; *Salter v. Heiser,* 39 Wn. (2d) 826, 239 P. (2d) 327; 24 Am. Jur. 55, Fraud and Deceit, § 227.

The evidence submitted in support of Clothier's claim for general damages consisted of the lease, which provided for a rental of five hundred dollars per month for a period of five years. An expert witness testified that the reasonable rental value of the building by reason of ordinance restrictions was two hundred fifty dollars per month. Considering that testimony with other evidence and permissible inferences to be drawn, the court found such rental to be three hundred dollars, or a differential of two hundred dollars per month. The amount of the judgment then became a matter of mathematical computation. The evidence submitted was

the usual and proper kind by which to prove general damages in a case of fraudulent inducement to enter into a contract.

I gather from the majority opinion that the court has determined Clothier not only failed to prove she had sustained any damage, but affirmatively established that she had not been damaged, because (1) the city did not threaten any abatement and took no legal action to evict Clothier from the premises or restrict her use of them; (2) the subtenants were not disturbed in their use of the premises; (3) Clothier conducted a dairy supply business on the first floor of the building, secured additional tenants who conducted various kinds of business activities and occupied space above the second floor that was not confined to office use; (4) no substantial alterations of the building were made by Clothier at any time; (5) she collected full rentals from all of her tenants during the entire three-and-one-half-year period preceding the trial of the action brought against her; and (6) she stated in her testimony that due to the posting of notice on the building by the city she had not been able to offer space to anyone to rent, and, therefore, the property had at least the rental value fixed by the lease during the time Clothier occupied it.

The foregoing facts and events all relate to a time after the lease had been made, but that can have no bearing upon the question of damages for the reason that the damages accrued when the deception was practiced and the lease was executed. In *Nelson Co. v. Goodrich*, 159 Wash. 189, 292 Pac. 406, reference was made to the time when a cause of action for deceit arises and we said:

"If appellant was induced by false and fraudulent representations to enter into the contract, then his cause of action immediately arose, and was in existence when the contract was afterwards assigned to the respondent."

Even though Clothier may have suffered no loss of rentals, such fact did not defeat her right to recover the difference between the rental value of restricted property and the contract rental under the "benefit of bargain" rule. The rule is stated in 24 Am. Jur. 57, § 227, as follows:

"Under the benefit-of-the-bargain rule, the fact that the property received by the plaintiff in the transaction in which fraudulent misrepresentations are made is worth as much as or more than he paid therefor does not defeat his right to recover the difference between the actual value of the property and the amount that it would have been worth if it had been as represented. According to this view, the value or amount of the consideration paid or given by the plaintiff is immaterial and cannot affect the amount of his recovery. Whether or not the plaintiff makes a subsequent advantageous disposition of the misrepresented property likewise does not affect the application of the rule that he is entitled to the difference between the value of the property represented or warranted and the value of the property received."

It would seem to follow from the foregoing that Clothier did prove she had been the victim of fraud and also established by evidence that she sustained a damage and the amount thereof.

